**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re RTI Surgical Derivative Litigation | Master File No.: 1:20-CV-3347 (MFK)<br><br>Judge: Hon. Matthew F. Kennelly<br>Magistrate: Hon. Beth Jantz |

**NOMINAL DEFENDANT RTI SURGICAL HOLDINGS, INC.'S MEMORANDUM IN**
<u>**OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND EXPENSES**</u>

**SIDLEY AUSTIN LLP**
James W. Ducayet
One South Dearborn
Chicago, IL 60603
(312) 853-7621
jducayet@sidley.com

*Counsel for Nominal Defendant*
*RTI Surgical Holdings, Inc. n/k/a Surgalign*
*Holdings, Inc.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

      A.     The Investigations and Restatement .........................................................2

      B.     The Lowry Class Action, the Copycat Derivative Litigation and
Books and  Records Demand........................................................................2

      C.     The Settlement ..............................................................................................3

ARGUMENT ..........................................................................................................................4

    I.     The Lodestar Method is the Most Appropriate Approach for Determining
Attorney's Fees in This Case Involving Only Non-Monetary Recovery ................5

    II.    Derivative Counsel's Lodestar Cannot Be Accurately Calculated Given the
Lack of Supporting Documentation.........................................................................7

      A.     Plaintiffs Fail To Establish the Hours They Expended Are Reasonable .....7

      B.     Plaintiffs Fail to Establish that Their Hourly Rates Are Reasonable...........9

    III.   A Multiplier Is Not Warranted................................................................................10

      A.     The Benefits Achieved and Case Complexity Are Baked into the
Lodestar......................................................................................................10

      B.     Any Risks Borne by Derivative Counsel Do Not Justify a Multiplier ......11

CONCLUSION......................................................................................................................13

# **TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*In re Abbott-Depakote S'holder Deriv. Litig.*,
  No. 11-8114 (N.D. Ill. May 22, 2014) ...................................................................13

*Adamik v. Motyka*,
  2018 WL 3574751 (N.D. Ill. July 25, 2018) .........................................................10

*Americana Art China Co. v. Foxfire Printing & Pkg., Inc.*,
  743 F.3d 243 (7th Cir. 2014) ................................................................................5

*Artis v. U.S. Indus.*,
  1990 WL 133520 (N.D. Ill. Sept. 11, 1990) .........................................................11

*In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*,
  2009 WL 762438 (S.D.N.Y. Mar. 24, 2009) .......................................................11

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005) ..................................................................13

*Florin v. Nationsbank of Georgia, N.A.*,
  34 F.3d 560 (7th Cir. 1994) ..................................................................................12

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................13

*Gould v. Cederoth (Navistar Int'l Corp.)*,
  2017 WL 11632382 (N.D. Ill. Jan. 25, 2017) ......................................................13

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) ........................................................................6, 8, 10

*Harper v. City of Chicago Heights*,
  223 F.3d 593 (7th Cir. 2000) ..................................................................................9

*Heriaud v. Ryder Transp. Servs.*,
  2006 WL 681041 (N.D. Ill. Mar. 14, 2006) ...........................................................5

*In re J&J Deriv. Litig.*,
  2013 WL 6163858 (D.N.J. Nov. 25, 2013) ..........................................................12

*Kirsch v. Fleet Street, Ltd.*,
  148 F.3d 149 (2d Cir. 1998) ...................................................................................7

*Mango v. BuzzFeed, Inc.*,
397 F. Supp. 3d 368 (S.D.N.Y. 2019)...................................................................................5

*In re MiMedx Group, Inc. S'holder Deriv. Litig.*,
No. 18-cv-04486 (N.D. Ga. Dec. 21, 2020).........................................................................12

*Mitchell v. Reiland (Broadwind Energy, Inc.)*,
No. 11-cv-01059 (N.D. Ill. Mar. 13, 2014).........................................................................13

*In re NCAA Student-Athlete Concussion Injury Litig.*,
332 F.R.D. 202 (N.D. Ill. 2019)...........................................................................................7

*Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*,
776 F.2d 646 (7th Cir. 1985) ...............................................................................................7

*Pickett v. Sheridan Health Care Ctr.*,
664 F.3d 632 (7th Cir. 2011) .............................................................................................10

*Reid v. Unilever U.S.*,
2015 WL 3653318 (N.D. Ill. June 10, 2015) ............................................................ *passim*

*In re Revolution Lighting Techs. Inc. Deriv. Action*,
No. 19-cv-03913 (S.D.N.Y. Aug. 11, 2020).......................................................................13

*Rubery v. Caplan*,
2013 WL 12327500 (S.D.N.Y. Oct. 3, 2013) .......................................................................6

*Schlacher v. Law Offices of Phillip J. Rotche & Assocs.*,
574 F.3d 852 (7th Cir. 2009) .........................................................................................6, 8

*Shakman v. City of Chicago*,
2008 WL 754124 (N.D. Ill. Mar. 18, 2008)........................................................................11

*Sonii v. General Electric Co.*,
2003 WL 21541039 (N.D. Ill. June 11, 2003) ......................................................................4

*In re Star Scientific, Inc.*,
2016 WL 4820637 (E.D. Va. Aug. 3, 2016).....................................................................6, 8

*Taubenfeld v. Aon Corp.*,
415 F.3d 597 (7th Cir. 2005) ...............................................................................................5

*In re Telesphere Int'l Sec. Litig.*,
753 F. Supp 716 (N.D. Ill 1990) .....................................................................................8, 10

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
2019 WL 516148 (S.D.N.Y. Feb. 11, 2019).......................................................................11

*Ustrak v. Fairman*,
851 F.2d 983 (7th Cir. 1988) ...............................................................................................9

*Vladimir Gusinsky Revocable Trust v. Tribune Publishing*,
  No. 2020-0716 (Del. Ch. May 2, 2021) .................................................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ....................................................................................12

*In re Walgreens Co. Deriv. Litig.*,
  No. 13-cv-05471 (N.D. Ill. Dec. 16, 2014) ...........................................................12

*Wallace v. Fox*,
  7 F. Supp. 2d 132 (D. Conn. 1998) ......................................................................6, 8

*Warfield v. City of Chicago*,
  733 F. Supp. 2d 950 (N.D. Ill. 2010) ....................................................................10

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...................................................................13

*Yamada v. Nobel Biocare Holding AG*,
  825 F.3d 536 (9th Cir. 2016) ..................................................................................6

**Statutes**

8 Del. C. § 220 ...............................................................................................................3

Nominal Defendant RTI Surgical Holdings, Inc. n/k/a Surgalign Holdings, Inc. (the "Company") submits this memorandum in opposition to Plaintiffs' Motion for Approval of Attorney's Fee and Expense Amount (D.E. 84) and supporting Memorandum of Law (D.E. 81) (the "Fee Motion" or "Mot.").

## INTRODUCTION

In the Fee Motion, counsel for Plaintiffs Niall Campbell, Dominick De Filippis, and David Summers ask this Court to award $1.5 million in attorney's fees (the "Fee Request"). This represents a 2.44 multiplier on their purported lodestar of $613,943.00, for legal work performed by 22 different legal professionals—six partners, one of counsel, eight associates, three paralegals, and four research assistants/legal clerks—at six different law firms (collectively, "Derivative Counsel"). The Fee Request is unreasonable and deficient as a matter of law.

For their inflated request, Plaintiffs rely on the purported "substantial benefits [they] achieved," the risk that they might be left "uncompensated for their time," and the "complexity of the issues presented." Mot. at 7, 10. But these factors are already included in a proper lodestar calculation and there are no "rare" circumstances here to warrant a multiplier. Moreover, Plaintiffs have not provided any detailed, contemporaneous billing records to support the Fee Request. Instead, they attach only bare-bones summaries of billings from six different law firms, which inevitably include duplication and do not satisfy their burden of demonstrating the reasonableness of the Fee Request.

The Company does not oppose an award of reasonable fees based on proper documentation, but the Fee Request is a significant overreach. This case has been stayed for longer than it has been actively litigated. And during the few months the case has been "active," Derivative Counsel piggy-backed off the work of others, including investigative findings by the Company's outside counsel and auditors in an internal investigation, as well as work undertaken

1

by plaintiffs' counsel in *Lowry v. RTI Surgical Holdings, Inc.*, No. 20 C 1939 (the "*Lowry* Action"), the securities class action which forms the basis for this derivative action. Other than filing the initial complaints and one amended complaint, Derivative Counsel's work in this case consisted largely of serving pre-complaint demand letters and a related books and records request on the Company, reviewing less than 1,000 pages of documents produced in response to the books and records request, and negotiating the settlement and their own fees. Neither these efforts, nor the corporate governance reforms obtained by them, justify an award of $1.5 million.

The Fee Motion should be denied or, alternatively, any fee award should be reduced to less than Derivative Counsel's overstated lodestar of $613,943.00.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Investigations and Restatement

On March 16, 2020, the Company announced that it would be unable to timely file its Form 10-K for fiscal year 2019. That is because its Audit Committee, with the assistance of independent legal and forensic advisors, was conducting an investigation into the revenue recognition practices associated with one of its business segments (the "Internal Investigation"). Following the Internal Investigation, the Company restated its previously-issued audited financial statements for several years (the "Restatement"). The Restatement primarily involved the timing of revenue recognized from sales in a single business segment. The Company's management concluded that its internal controls over financial reporting were not effective as of December 31, 2018 because there were material deficiencies in the Company's control and monitoring activities. In the Restatement, the Company disclosed these deficiencies and the actions it had taken to address them.

### B. The *Lowry* Class Action, the Copycat Derivative Litigation and Books and Records Demand

The *Lowry* Action, filed in April 2020, alleged that the Company and certain current and former officers and directors engaged in a fraudulent "revenue smoothing" practice, and made

2

false and misleading statements to investors that the Company had properly recognized revenue, its internal controls were adequate, and its public disclosures were complete.

On June 5, 2020, Plaintiff Summers filed the first shareholder derivative complaint, which largely parroted the allegations in the *Lowry* Action and asserted similar claims for purported violations of the federal securities laws, as well as additional state law claims. In June and July 2020, respectively, Plaintiffs Campbell and De Filippis each filed similar derivative actions. The Court consolidated the derivative actions and, in September 2020, upon request of the Parties, stayed the consolidated action pending resolution of the motions to dismiss that had been filed in the *Lowry* Action. The stay remained in force for seven months until April 2021, when the Court denied the motions to dismiss in the *Lowry* Action.[1] In May 2021, stockholder Schweigert served a demand for books and records on the Company pursuant to 8 Del. C. § 220. In response to that request, the Company produced approximately 1,000 pages of non-privileged Board and Audit Committee meeting minutes and materials.

In June 2021, Plaintiffs filed an Amended Consolidated Complaint. It again piggy-backed on class plaintiff's allegations and incorporated additional allegations based on the Restatement and the Court's Order in the *Lowry* Action denying the motions to dismiss.[2] That same month, Plaintiffs sent the Company a written settlement demand and Plaintiffs and Defendants (the "Parties") agreed to mediate the derivative litigation and again stay this action.

## C. The Settlement

On June 30, 2021, the Parties participated in a full-day mediation conference. Although a settlement was not reached on that day, the Parties and the mediator continued negotiations until

---

[1] The Court has preliminarily approved the $10.5 million settlement in the *Lowry* Action and the final approval hearing for that settlement is scheduled for January 24, 2022.

[2] *See, e.g.,* Amended Complaint at ¶¶ 200-08 (D.E. 57) (claiming the defendants committed wrongdoing by allowing Company to operate with deficient internal controls and quoting extensively from the disclosures in the Restatement to highlight those deficiencies).

they reached an agreement-in-principle to settle the derivative litigation and signed a binding term sheet. In September 2021, the Parties finalized and executed a settlement stipulation (the "Stipulation") (D.E. 73), in which the Company agreed to adopt certain corporate governance reforms ("Corporate Governance Reforms") in exchange for Plaintiffs' agreement to dismiss this action with prejudice. Defendants did not agree to—and the settlement does not include—any monetary payment. Later that month, the Court issued an Order for Preliminary Approval of the settlement (D.E. 78). The Preliminary Approval Order recognized that if the Parties were unable to reach agreement on attorney's fees, Derivative Counsel could submit an award of up to $1.5 million to the Court for its determination.

Thereafter, the Parties, with the assistance of the mediator, negotiated in good faith regarding the amount of fees to be paid to Derivative Counsel. The discussions broke down in October 2021. Before filing its Fee Motion on December 27, 2021, Plaintiffs did not inform the Company that the Fee Motion would be forthcoming, advise it of the amount of the Fee Request, or attempt to prepare a joint statement regarding the requested fees in compliance with Local Rule 54.3. The Fee Motion does not include contemporaneous billing records to justify the hours billed or documentation to support the claimed hourly rates to allow the Company or the Court to gauge the reasonableness of the Fee Request.

## **ARGUMENT**

The Company does not dispute that Derivative Counsel are entitled to a reasonable fee award upon submission of appropriate documentation.[3] However, the Company challenges the

---

[3] Plaintiff's failure to comply with Local Rule 54.3 alone renders the Fee Motion deficient. Nevertheless, the Court has discretion to delay ruling on the Fee Motion until the protocols in Local Rule 54.3 are met or to waive them. *See Reid v. Unilever U.S.*, 2015 WL 3653318, at *3 (N.D. Ill. June 10, 2015); *Sonii v. General Electric Co.*, 2003 WL 21541039, at *3 (N.D. Ill. June 11, 2003). In addition, the Company takes no position on Plaintiffs' request for $2,500.00 service awards for each Plaintiff. Mot. at 13. However, Plaintiffs' request for reimbursement of $15,1018.85 in expenses (*Id*. at 12-13) is insufficiently supported. Even though the expenses would be taken from the attorney's fees, Plaintiffs have not provided any supporting documentation such as invoices. "[C]ourts may reduce or decline to award costs altogether

4

inappropriate multi-factor standard Plaintiffs ask this Court to utilize in deciding the Fee Motion and the resultant oversized fee award. The method advocated by Plaintiffs is misplaced because the settlement did not produce any monetary benefit to the Company. Instead, where the recovery is limited to non-monetary corporate governance reforms, the lodestar method is favored.

Moreover, Plaintiffs' $1.5 million Fee Request for work done by six different law firms undoubtedly seeks recovery for duplicative efforts. There is insufficient documentation to permit any meaningful analysis of the reasonableness of the requested fee. Additionally, Derivative Counsel piggy-backed off the work of others, they did not obtain any exceptional recovery for the Company or its shareholders, the case was settled at an early stage before the sufficiency of any complaint was tested, and the case was stayed for longer than it was litigated. As such, any multiplier of a properly computed lodestar, much less the 2.44 multiplier requested, is unwarranted.

## I. The Lodestar Method is the Most Appropriate Approach for Determining Attorney's Fees in This Case Involving Only Non-Monetary Recovery

A determination of the amount of attorney's fees awarded, as well as the methods used to ascertain a reasonable fee, is within the sound discretion of the Court. *See Americana Art China Co. v. Foxfire Printing & Pkg., Inc.*, 743 F.3d 243, 247 (7th Cir. 2014).

Plaintiffs ask this Court primarily to utilize a multi-factor approach that is generally reserved for cases where there is a monetary recovery.[4] According to Plaintiffs, the Court should consider a number of factors including: (1) the amount of the benefit conferred (which Plaintiffs contend is the most important factor); (2) awards made in similar cases; (3) the skill and efficiency

---

where counsel fails to proffer documentation of the expenses." *Mango v. BuzzFeed, Inc*., 397 F. Supp. 3d 368, 378 (S.D.N.Y. 2019) (denying costs where plaintiff "did not provide receipts, invoices, or any other sort of contemporaneous evidence" because "the Court ha[d] no warranted basis for noting their accuracy"); *Heriaud v. Ryder Transp. Servs*., 2006 WL 681041, at *4 (N.D. Ill. Mar. 14, 2006) (same).

[4] *See* Mot. at 3 (citing *Taubenfeld v. Aon Corp*., 415 F.3d 597, 600 (7th Cir. 2005)) (court determined appropriateness of attorney's fee award amounting to 30% of a $7.25 million settlement fund).

of the attorneys involved; (4) the complexity and duration of the litigation; and (5) the risk of nonpayment. Mot. at 3. Plaintiffs suggest that the Court should "cross-check" the fee amount derived from these factors with a lodestar analysis. *Id.* at 9.

Plaintiffs cite no case in the Seventh Circuit to support their proffered approach where, as here, the recovery was solely non-monetary. This is not surprising. The non-monetary Corporate Governance Reforms are difficult, if not impossible, to value. The lodestar method, whereby the fee award is determined by multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation, presents no such inherent impracticalities or roadblocks. As a result, in similar circumstances, courts typically apply the traditional lodestar method.[5]

This Court should follow suit. The lodestar method is well-recognized and has been applied in the Seventh Circuit.[6] Under the lodestar approach, the party seeking a fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates. *Reid v. Unilever U.S.*, 2015 WL 3653318, at *3 (N.D. Ill. June 10, 2015). In considering whether a fee request is reasonable, the Court must exclude hours it deems "inadequately documented or not reasonably expended on the litigation" and reject any claimed rates that are unsupported by the necessary documentation or exceed market rates in the community. *Id.* at *3, 14. Once the lodestar is

---

[5] *See, e.g., Yamada v. Nobel Biocare Holding AG,* 825 F.3d 536, 546 (9th Cir. 2016) (finding lodestar method appropriate "where the relief sought and obtained is not easily monetized."); *In re Star Scientific, Inc.,* 2016 WL 4820637, at *4 (E.D. Va. Aug. 3, 2016) (in determining appropriateness of fee award in derivative action, court refused to try to monetize sole recovery—corporate governance reforms—and instead utilized lodestar approach); *Rubery v. Caplan,* 2013 WL 12327500, at *1 (S.D.N.Y. Oct. 3, 2013) (applying lodestar method in derivative action involving agreed governance reforms and no monetary payment because value of settlement was "difficult, if not impossible, to quantify."); *see also Wallace v. Fox,* 7 F. Supp. 2d 132, 138-39 (D. Conn. 1998) (rejecting method based on recovery achieved by plaintiffs and applying lodestar approach in derivative action involving monetary and non-monetary recovery).

[6] *See Harman v. Lyphomed, Inc.,* 945 F.2d 969, 974 (7th Cir. 1991) (court exercised its discretion to reject method to evaluate fee issue based on percentage of monetary fund achieved in settlement and determined fee award based on "traditional" lodestar method); *see also Reid,* 2015 WL 3653318, at *3 ("To calculate an appropriate fee award, courts start with the 'lodestar' amount . . .."); *Schlacher v. Law Offices of Phillip J. Rotche & Assocs.,* 574 F.3d 852, 856 (7th Cir. 2009) ("Although there is no precise formula for determining a reasonable fee, the district court generally begins by calculating the lodestar. . .").

determined, the Court may, in its discretion, increase or reduce the lodestar amount by applying a multiplier. *Id.* at *24. However, there is a "strong presumption" that "the lodestar figure includes most, if not all, of the relevant factors" and therefore, constitutes a reasonable attorney's fee. *Id.* (internal quotation marks omitted).

## II. Derivative Counsel's Lodestar Cannot Be Accurately Calculated Given the Lack of Supporting Documentation

Plaintiffs have the burden to demonstrate the reasonableness of their Fee Request. *See Reid*, 2015 WL 3653318, at *3. The Fee Motion does not satisfy this burden. It lacks the necessary documentation to justify the reasonableness of the hours worked and the rates claimed.

### A. Plaintiffs Fail To Establish the Hours They Expended Are Reasonable

Plaintiffs do not provide any contemporaneous billing records to support their claimed lodestar of $613,943.00. Instead, they submit lists from the six law firms seeking fees which identify each timekeeper, the number of hours he or she billed to the case and a claimed rate for each timekeeper, along with charts from five of those firms[7] grouping each timekeeper's hourly billings into one of seven general categories.[8] *See, e.g.,* Houston Decl., Ex. F-2 (Dkt. 1020). This is insufficient for the Company to evaluate, or the Court to approve, the Fee Request.[9] As such, the fees should be reduced or sufficient documentation provided. The failure to submit their time records is particularly telling because some of these same counsel have been criticized in prior

---

[7] Miller Law, LLC provides no explanation as to the services it performed to warrant the $13,959.50 in fees it seeks. *See* Houston Decl., Ex. J (Dkt. 1162-65). For this reason, its fee request must be denied.

[8] The categories include: "Factual Investigation including Books and Records Demand Production"; "Legal Research"; "Litigation Strategy and Analysis"; "Draft Initial or Amended Complaint"; "Other Pleadings, Briefs, Pretrial Motions and Court Hearings"; "Settlement"; and "Client/ Shareholder Communication."

[9] *See Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) ("Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done."); *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 658 (7th Cir. 1985) (affirming district court's reduction of hours based on vagueness of descriptions and failure to provide detailed analysis); *In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 224 (N.D. Ill. 2019) (reducing by half fees requested in submission with time entries "grouping several different activities into broad categories….").

7

cases for the same type of inherently deficient submissions.[10]

Even if this Court were to consider the Fee Motion in the absence of Derivative Counsel's underlying billing records, a substantial reduction to the claimed lodestar is warranted given the inevitable duplication of effort among 22 legal professionals at six different law firms.[11] Indeed, this litigation began with three separately filed derivative complaints by different law firms all seeking the same relief on behalf of the same entity. As the Court noted in *In re Telesphere Int'l Sec. Litig.*, 753 F. Supp 716, 717 (N.D. Ill 1990):

> [Such] multiplicity alone meant that a substantial number of lawyers had engaged in much the same threshold activity, very likely of significant scope, in order to prepare and file their complaints. And of course that initial activity was necessarily duplicative and ultimately provided no more benefit . . . than a single law firm's efforts would have done. . . . [T]here is just no question that the hours spent by *ten* law firms . . . had to exceed by some substantial amount the time that lawyers in one law firm handling the ultimate single lawsuit would have had to spend in its preparation, filing and prosecution. And that is so no matter how efficiently the lead counsel and liaison counsel were in their efforts at coordination and in parceling out the work once the litigation team was organized.[12]

This case involves similar redundancies and duplication of effort. Derivative Counsel should not be rewarded with excessive fees for filing multiple complaints and conducting other overlapping work, and then seeking compensation for their duplicative efforts.[13]

---

[10] *See, e.g., In re Star Scientific*, 2016 WL 4820637, at *2, 7, 8 n.14 (rejecting similar chart summaries and reducing initial proposed fee request by 50% following counsel's submission of detailed records in response to court's order and criticizing "widespread duplication of effort among the seven law firms billing time to this case."); *Wallace v. Fox*, 7 F. Supp. 2d 132, 140 (D. Conn. 1998) (reducing lodestar by 53% because only chart summaries were provided).

[11] *See Schlacher*, 574 F.3d at 858 (concluding "that it was unreasonable to require the defendant to pay for the time that four attorneys had collectively put into the case because their work necessarily overlapped and one competent attorney would have sufficed"); *Harman*, 945 F.2d at 972 (affirming district court's order reducing the proposed lodestar where "large number of attorneys are billing a substantial amount of time and it appears that such circumstances resulted in otherwise unnecessary duplication of effort").

[12] *Id.* at 717-18 (noting inevitable duplication of effort when multiple firms involved and finding "logical measure of reasonable fee" is amount that would have been charged by one single firm); *see also Schlacher*, 574 F.3d at 858 (affirming district court order that reduced hours claimed in fee petition because "collaboration among four attorneys had inevitably led to duplicative work and excessive billing").

[13] *See, e.g., In re Star Scientific*, 2016 WL 4820637, at *7-8 (finding fees sought by multiple law firms and lawyers that worked on the same or similar tasks" were excessive and reducing lodestar accordingly). Five

Accordingly, this Court should either deny the Fee Motion outright, with instructions to Plaintiffs to submit their billing records for review, or reduce the proposed lodestar by a reasonable percentage to offset the redundant and excessive hours inevitably embedded in the Fee Request. *See, e.g., Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000) ("[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or . . . reduce the proposed fee by a reasonable percentage.").[14]

### B.      Plaintiffs Fail to Establish that Their Hourly Rates Are Reasonable

In support of the Fee Request, Derivative Counsel present declarations attesting that the hourly rates claimed "are the usual and customary rates in all of our cases" and are "reasonable in light of the current market rate for lawyers litigating similar complex actions." *See, e.g.*, Houston Decl. ¶ 62 (Dkt. 979). But these "self-serving [declarations] alone cannot establish the market rate for [Derivative Counsel's] attorney's services." *Harper*, 223 F.3d at 604.

To satisfy their burden, Plaintiffs must not only present statements from Derivative Counsel attesting to the attorneys' own rates, they must also submit specific evidence establishing

---

of the firms seeking fees here collectively recorded over 112 hours to the vague category "Other Pleadings, Briefs, Pretrial Motions and Court Hearings" and 72 hours for "Litigation Strategy & Analysis." These ambiguous categories likely improperly include time for duplicative efforts and are also questionable given the few months this case was actively litigated. *See* Houston Decl., Exs. F-2, G-2, H-2, I-2, K-2 (Dkts. 1020, 1057, 1107, 1158, 1243).

[14] The Fee Request also includes charts documenting hours purportedly billed by Derivative Counsel after the Stipulation of Settlement was finalized on September 11, 2021 through December 20, 2021. *See* Houston Decl. Exs. F-3, G-3, H-3, I-3, K-3 (Dkts. 1022, 1058, 1109, 1160, 1245). Plaintiffs claim that if this additional time is considered, their lodestar would be $813,582.00. Mot. at 10 n.6. These additional hours, included almost exclusively in the "Settlement" category of the charts and which post-date the finalization of the Stipulation, undoubtedly relate to negotiations about Derivative Counsel's fee. Plaintiffs are not entitled to collect for these 300-plus hours, representing more than $200,000 in additional fees, disproportionate to the time spent on the merits. The additional hours spent on fees amount to about 25% of the total time Derivative Counsel spent on the merits; the Kahn Swick firm appears to have spent more than 40% of its total claimed hours on fees. To reward such a self-serving imbalance would be "the tail wagging the dog, with a vengeance." *See Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir. 1988) (disallowing two-thirds of lawyer time spent on fee petition where they spent 18 minutes on fees for every hour devoted to merits); *Reid*, 2015 WL 3653318 at *12 ("Where the time expended preparing a fee petition is disproportionate to the time spent on the merits of the case, courts reduce the amount of time recoverable for the preparation of the fee petition.").

the reasonableness of the requested rates in this District, where the legal services are rendered.[15]

"The Seventh Circuit has expressed a preference for third party affidavits" to accomplish this.[16]

Because Plaintiffs have failed to carry their burden in this regard, the Court may properly make its

own determination of a reasonable rate for each of the attorneys included in the Fee Request. *See*

*Pickett,* 664 F.3d at 640; *Reid*, 2015 WL 3653318, at *14.[17]

## III.    A Multiplier Is Not Warranted

Finally, Plaintiffs request a 2.44 multiplier on top of the already over-inflated lodestar

because of the "substantial benefits achieved," "the complexity of the issues presented," and the

risk of non-payment in taking this case on a contingent basis. Mot. at 9-10. But they are not entitled

to any multiplier unless they can show the lodestar enhancement is justified. *Reid,* 2015 WL

3653315, at *24. This is a heavy burden because, as noted, there is a "strong presumption" that the

lodestar figure is reasonable.[18] Indeed, a multiplier is appropriate only in "rare" or "exceptional"

cases "in which the lodestar does not adequately account for a factor that may properly be

considered in determining a reasonable fee." *Perdue*, 559 U.S. at 543. This is not such a case.

### A.       The Benefits Achieved and Case Complexity Are Baked into the Lodestar

No multiple is warranted because the factors upon which Plaintiffs rely for a lodestar

---

[15] *See Reid*, 2015 WL 3653318, at *14 (holding that requested rates must be "in line with those prevailing in the community"); *Harper*, 223 F.3d at 604 (finding that a reasonable hourly rate "for lodestar purposes is the rate that lawyers of similar ability and experience in their community normally charge their paying clients for the type of work in question.") (internal quotation marks omitted).

[16] *See Reid*, 2015 WL 3653318, at *14 (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011)) (declining to award requested rates due to lack of third-party affidavits).

[17] At least one recent survey of the legal profession reports that average hourly rates in the Midwest region in 2021 were significantly lower—$375 for partners and $225 for associates. *See* 49th Annual Survey of Law Firm Economics at 5, ALM Intelligence and Nat. L.J. (2021), attached at Ex. A. While not a perfect measure, this survey does provide some guidance to at least suggest that Derivative Counsel's rates are inflated.

[18] *Perdue*, 559 U.S. at 554; *see also In re Telesphere,* 753 F. Supp at 718 (finding lodestar "already contains a multiplier of some material but unquantified amount.").

enhancement are subsumed in the lodestar calculation.[19] Derivative Counsel has not achieved any extraordinary results to justify a multiplier. Although each of the complaints sought monetary relief, Derivative Counsel achieved no monetary recovery for the Company. In addition, the agreed-upon Corporate Governance Reforms[20] are typical of those obtained in non-monetary derivative settlements and do not warrant an upward adjustment to the lodestar. [21]

### B. Any Risks Borne by Derivative Counsel Do Not Justify a Multiplier

Nor is a multiplier warranted by any risks Plaintiffs faced in this case, including the risk of non-payment for bringing this action on a contingent basis. "[I]t is well established that the risk of nonpayment involved in a contingent-fee case" does not justify the enhancement of a lodestar. *See Reid,* 2015 WL 3653318, at *25 (noting that "an enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar.").

Here, there was little to no risk for Derivative Counsel, who used the Company's work in the internal investigation, its disclosures in the Restatement, and the order denying the motions to

---

[19] *See Adamik v. Motyka*, 2018 WL 3574751, at *11 (N.D. Ill. July 25, 2018) (citing *Perdue*, 559 U.S. at 543) (finding "the lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee," and "the case's novelty and complexity" and the "quality of an attorney's performance" are generally "subsumed in the lodestar calculation."); *Reid*, 2015 WL 3653318, at *3 (citing *Warfield v. City of Chicago*, 733 F. Supp. 2d 950, 957 (N.D. Ill. 2010)) ("[I]n this District, the amount of a recovery is considered to be a factor that is subsumed in the lodestar calculation."); *Harman*, 787 F. Supp. 772 at 781 (noting "the quality factor should be eliminated from consideration" as "superfluous since it reflects the type of performance expected of all attorneys and theoretically already has been taken into account by the district court in setting standardized rates."); *Artis v. U.S. Indus.*, 1990 WL 133520, at *2 (N.D. Ill. Sept. 11, 1990) (noting that multipliers based on "superior quality of counsel's performance" are discouraged and only available in "certain rare and exceptional cases") (internal quotations omitted).

[20] The Corporate Governance Reforms include the creation of a management-level Disclosure Committee, enhanced director education, limits to director service on other boards, revised Audit and Compensation Committee charters and enhanced whistleblower and insider trading policies, among others. *See* Stipulation § V at ¶ 3 (D.E. 73). The Company's acknowledgement in the Stipulation that these reforms confer a substantial benefit on it is a standard recital in derivative settlements and should not be misconstrued as an admission that the agreed-upon reforms warrant an upward adjustment to the lodestar amount.

[21] *See Reid*, 2015 WL 3653315, at *25 (concluding that Plaintiffs failed to demonstrate that recovery was of exceptional nature to warrant a multiplier); *Shakman v. City of Chicago*, 2008 WL 754124, at *7 (N.D. Ill. Mar. 18, 2008) (rejecting multiplier because "[p]laintiffs simply have not achieved the extraordinary level of success necessary to justify [it].").

11

dismiss in the *Lowry* Action as a roadmap for their claims.[22] Nor was the risk of non-payment to Derivative Counsel so extraordinary to justify an increase to the lodestar. Clearly, the half-a-dozen law firms which joined the fray to vie for lead counsel status believed the case was worth their efforts and that they would be paid.[23]

Plaintiffs suggest that *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) mandates a risk multiplier here. Plaintiffs misleadingly alter the holding of the case to suggest that it applies to all contingent, representative matters.[24] It does not. *Florin* involved a monetary common fund from which the attorney's fees were paid. Here, any awarded fee will be funded on behalf of the Company, the party whose interests Derivative Counsel are supposed to safeguard. Moreover, the multiplier there was 1.53, less than the 2.44 multiplier Plaintiffs seek, and below the Seventh Circuit's "sensible ceiling" of 2 for multipliers. *See Cook*, 142 F.3d 1004, 1013 (7th Cir. 1998).

Plaintiffs assert that the multiple is reasonable because it is "well below multipliers awarded in other corporate governance and securities cases." Mot. at 10. The Court should not be guided by Plaintiffs' selectively-picked cases, most of which are outside this District. None involved a contested fee petition. And nearly all either had a common fund, were class actions, involved dissimilar facts such as criminal investigations and high civil or criminal penalties,

---

[22] *See In re Tremont Sec. Law, State Law & Ins. Litig.*, 2019 WL 516148, at *11 (S.D.N.Y. Feb. 11, 2019) ("[W]here claims were precipitated by public events, the risk undertaken by class counsel is especially slight"); *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, 2009 WL 762438, at *4 (S.D.N.Y. Mar. 24, 2009) (discounting the requested fee by 44% where "much of these firms' work involved review of work performed by Class Counsel or other attorneys.").

[23] *See In re J&J Deriv. Litig.*, 2013 WL 6163858, at *11 (D.N.J. Nov. 25, 2013) (finding no risk to justify multiple because of "the number of attorneys seeking to be the first in the door in filing [suit] on behalf of shareholders, and the intense level of competition litigating who would become lead counsel.").

[24] *Compare Florin,* 34 F.3d at 565 ("[A] risk multiplier is not merely available in *a common fund case* but mandated, if the court finds that counsel 'had no sure source of compensation for their services,'") (emphasis added) *with* Mot. at 9 ("[A] risk multiplier is not merely available in *[contingent, representative cases]* but mandated, if the court finds that counsel had no sure source of compensation for their services.").

12

and/or, as Plaintiffs concede, were "settled at more advanced procedural postures." Mot. at 7 n.4.[25]

To the extent that the Court is inclined to look at precedent, other more factually-and-procedurally-similar cases support a much lower award than requested by Plaintiffs. *See Gould v. Cederoth (Navistar Int'l Corp.),* 2017 WL 11632382 (N.D. Ill. Jan. 25, 2017) (0.77 multiplier and $525,000 in fees); *Mitchell v. Reiland (Broadwind Energy, Inc.*), No. 11-cv-01059 (N.D. Ill. Mar. 13, 2014) (0.63 multiplier and $600,000 in fees), attached at Ex. B; *In re Revolution Lighting Techs. Inc. Deriv. Action*, No. 19-cv-03913 (S.D.N.Y. Aug. 11, 2020) (0.96 multiplier and $583,000 in fees), attached at Ex. C.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Approval of Attorney's Fee and Expense Amount should be denied, with instructions to Plaintiffs to provide the appropriate documentation so the reasonableness of the Fee Request can be properly evaluated. Alternatively, the Court should exercise its discretion to significantly reduce the Fee Request below the $613,943.00 lodestar

---

[25] *See In re Walgreens Co. Deriv. Litig.*, No. 13-cv-05471 (N.D. Ill. Dec. 16, 2014) (plaintiffs alleged that directors breached their fiduciary duties in connection with Walgreens overselling Oxycodone and company paying $80 million penalty to DEA; case settled after motion to dismiss was fully briefed for no monetary payment but plaintiffs' counsel obtained funding from company for implementation of DEA settlement compliance addendum) (Houston Decl., Ex. D) (Dkt. 1002); *Vladimir Gusinsky Revocable Trust v. Tribune Publishing*, No. 2020-0716, Tr. at 30:10-16 (Del. Ch. May 2, 2021) (court decided attorney's fees under common fund approach and found fees on "high end" were warranted where plaintiffs' counsel achieved "fundamental corporate benefit" by removing poison pill from company's rights agreement; ) (Houston Decl., Ex. L at 26) (Dkt. 1247); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 123 (2d Cir. 2005) (settlement of antitrust class action brought by merchants against credit card companies included $3 billion common fund); *In re MiMedx Group, Inc. S'holder Deriv. Litig.*, No. 18-cv-04486 (N.D. Ga. Dec. 21, 2020) (case involved allegations of defrauding Veteran's Affairs and related criminal and civil governmental investigations) (Houston Decl., Ex. A) (Dkt. 984); *In re Abbott-Depakote S'holder Deriv. Litig.* ("Abbott II"), No. 11-8114 (N.D. Ill. May 22, 2014) (heavily litigated case stemming from company's off-label drug marketing resulting in $1.6 billion in civil and criminal penalties) (Houston Decl., Ex. E) (Dkt. 1008); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 862 (E.D. Mo. 2005) (global settlement of securities class actions and derivative action involving Charter Communication's payment of $39 million to common fund in class action); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354 (S.D.N.Y. 2005) (one of largest securities class action settlements ever with payment to common fund of over $2.5 billion in connection with collapse of WorldCom); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) (settlement of ERISA and securities class action involved $325 million payment to common fund).

identified by Derivative Counsel.

Dated:  January 10, 2022

Respectfully submitted,

*By: /s James W. Ducayet*
*Counsel for Nominal Defendant*
*RTI Surgical Holdings, Inc.*
*n/k/a Surgalign Holdings, Inc.*

**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL  60603
(312) 853-7621
jducayet@sidley.com

14

# EXHIBIT A



# THE SURVEY OF LAW FIRM ECONOMICS

## *2021 Edition*

Conducted and Published by



-- **&** --



150 East 42nd Street, Mezzanine Level
New York, NY 10017
(888) 770-5647
almlegalintel@alm.com
www.almlegalintelligence.com

Released: December 2021

All rights reserved. No part of this work may be reproduced or copied in any form or by any means, graphic, electronic or mechanical, including photocopying, recording, taping, or information and retrieval systems, without prior written permission of the publisher. For permission, contact customer service at 888.770.5647 or almlegalintel@alm.com.

© 2021 ALM Media Properties LLC

**STANDARD HOURLY BILLING RATES**

This section presents standard billing rates for equity partners and shareholders, non-equity partners and shareholders, associates

Trend Comparison – Senior Partners vs. Mid-level Associates
Charts--Median Standard Hourly Rate
National
Gender
Region
Firm Size
Population Area
Year Admitted to Bar
Years Legal Experience
Individual Lawyer Non-Litigation Specialties
Individual Lawyer Litigation Specialties
Individual Lawyer Non-Specialists

**TREND COMPARISON OF AVERAGE BILLING RATES IN LAW FIRMS**
**FOR 25 TO 29 YEAR PARTNERS AND 5 YEAR ASSOCIATES**

| | | 25th to 29th Year | | 5th Year Associate | | Ratio Partner to Assiociate Rates | CPI |
|---|---|---|---|---|---|---|---|
| | | $ | Index | $ | Index | | |
| Fiscal Year | 1985 | 128 | 100 | 82 | 100 | 1.56 | 100 |
| | 1986 | 143 | 112 | 89 | 109 | 1.61 | 102 |
| | 1987 | 142 | 111 | 96 | 117 | 1.48 | 106 |
| | 1988 | 143 | 112 | 99 | 121 | 1.44 | 111 |
| | 1989 | 157 | 123 | 108 | 132 | 1.45 | 116 |
| | 1990 | 166 | 130 | 115 | 140 | 1.44 | 123 |
| | 1991 | 170 | 133 | 118 | 144 | 1.44 | 129 |
| | 1992 | 181 | 141 | 124 | 151 | 1.46 | 133 |
| | 1993 | 184 | 144 | 124 | 151 | 1.48 | 137 |
| | 1994 | 194 | 152 | 127 | 155 | 1.53 | 141 |
| | 1995 | 198 | 155 | 132 | 161 | 1.50 | 145 |
| | 1996 | 200 | 156 | 125 | 152 | 1.60 | 149 |
| | 1997 | 207 | 162 | 134 | 163 | 1.54 | 153 |
| | 1998 | 228 | 178 | 148 | 180 | 1.54 | 155 |
| | 1999 | 230 | 180 | 160 | 195 | 1.44 | 159 |
| | 2000 | 245 | 191 | 164 | 200 | 1.49 | 165 |
| | 2001 | 259 | 202 | 168 | 205 | 1.54 | 170 |
| | 2002 | 270 | 211 | 186 | 227 | 1.45 | 172 |
| | 2003 | 274 | 214 | 189 | 230 | 1.45 | 176 |
| | 2004 | 294 | 230 | 203 | 248 | 1.45 | 181 |
| | 2005 | 301 | 235 | 193 | 235 | 1.56 | 188 |
| | 2006 | 318 | 248 | 209 | 255 | 1.52 | 194 |
| | 2007 | 336 | 263 | 220 | 268 | 1.53 | 200 |
| | 2008 | 352 | 275 | 227 | 277 | 1.55 | 208 |
| | 2009 | 346 | 270 | 218 | 266 | 1.59 | 207 |
| | 2010 | 357 | 279 | 219 | 268 | 1.63 | 210 |
| | 2011 | 378 | 295 | 252 | 307 | 1.50 | 217 |
| | 2012 | 370 | 289 | 256 | 312 | 1.45 | 222 |
| | 2013 | 375 | 293 | 251 | 299 | 1.53 | 225 |
| | 2014 | 399 | 312 | 257 | 313 | 1.56 | 229 |
| | 2015 | 444 | 347 | 307 | 374 | 1.45 | 233 |
| | 2016 | 435 | 340 | 258 | 315 | 1.69 | 236 |
| | 2017 | 482 | 377 | 294 | 359 | 1.64 | 242 |
| | 2018 | 536 | 419 | 346 | 422 | 1.55 | 247 |
| | 2019 | 491 | 384 | 290 | 354 | 1.69 | 251 |
| | 2020 | 473 | 370 | 284 | 346 | 1.67 | 258 |

**MEDIAN FOR STANDARD HOURLY RATE BY REGION**
for Status Codes Partner/Sharholder-Equity/Non-Equity and Associate/Staff Lawyer

| | Partner/ Sharholder-Equity/Non-Equity | Associate/Staff Lawyer |
|---|---|---|
| Region | Rate $ | Rate $ |
| Northeast | $480 | $313 |
| Midwest | $375 | $225 |
| South | $450 | $350 |
| West | $350 | $260 |



**MEDIAN FOR STANDARD HOURLY RATE BY FIRM SIZE**
**for Status Codes Partner/Sharholder-Equity/Non-Equity and Associate/Staff Lawyer**

|  | Partner/ Sharholder-Equity/Non-Equity | Associate/Staff Lawyer |
|---|---|---|
| Firm Size | Rate $ | Rate $ |
| 1 to 9 Lawyers | $400 | $313 |
| 10 to 24 Lawyers | $435 | $238 |
| 41 to 75 Lawyers | $375 | $260 |
| 76 to 150 Lawyers | $460 | $350 |
| Over 150 Lawyers | $475 | $295 |



**MEDIAN FOR STANDARD HOURLY RATE BY POPULATION AREA**
**for Status Codes Partner/Sharholder-Equity/Non-Equity and Associate/Staff Lawyer**

| Population Area | Partner/ Shareholder- Equity/Non-Equity | Associate/Staff Lawyer |
|---|---|---|
| | Rate $ | Rate $ |
| Metropolitan | $423 | $260 |
| Metropolitan Division | $550 | $375 |



**MEDIAN FOR STANDARD HOURLY RATE BY YEAR ADMITTED TO BAR**
**History Graph for Status Codes Partner/Sharholder-Equity/Non-Equity and Associate/Staff Lawyer**

| | Partner/ Shareholder- Equity/Non-Equity | Associate/Staff Lawyer |
|---|---|---|
| Year Admitted to Bar | Rate $ | Rate $ |
| Before 1980 | $558 | $408 |
| 1980-1984 | $505 | $460 |
| 1985-1988 | $510 | $420 |
| 1989-1993 | $475 | $445 |
| 1994-1998 | $450 | $415 |
| 1999-2003 | $435 | $375 |
| 2004-2008 | $400 | $413 |
| 2009-2012 | $350 | $333 |
| 2013-2016 | $315 | $295 |
| 2017-2020 | - | $225 |

**NATIONAL INDIVIDUAL STATUS CODES**
**STANDARD HOURLY BILLING RATES**
**As of January 1, 2021**

| | Number of Offices | Number of Lawyers | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ |
|---|---|---|---|---|---|---|
| | | | | | Rate | |
| Equity Partner/Shareholder | 18 | 537 | $476 | $375 | $460 | $560 |
| Non-Equity Partner | 17 | 310 | $461 | $375 | $435 | $525 |
| Associate Lawyer | 18 | 405 | $311 | $242 | $295 | $360 |
| Staff Lawyer | 6 | 17 | $338 | $275 | $360 | $390 |
| Of Counsel | 13 | 114 | $435 | $350 | $400 | $490 |

**NATIONAL INDIVIDUAL STATUS CODES**
**STANDARD HOURLY BILLING RATES**
**As of January 1, 2021**

| | Number of Offices | Number of Lawyers | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ |
|---|---|---|---|---|---|---|
| | | | | | Rate | |
| Partner/Shareholder- Equity/Non-Equity | 18 | 847 | $471 | $375 | $450 | $545 |
| Associate/Staff Lawyer | 18 | 422 | $312 | $245 | $295 | $370 |
| Of Counsel | 13 | 114 | $435 | $350 | $400 | $490 |

**GENDER**
**STANDARD HOURLY BILLING RATES**
As of January 1, 2021

| | Gender/Status | Number of Offices | Number of Lawyers | Rate | | | |
|---|---|---|---|---|---|---|---|
| | | | | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ |
| Male | Equity Partner/Shareholder/Proprietor | 17 | 436 | $484 | $385 | $465 | $570 |
| | Non-equity Partner/Salaried Partner/Non-Participating Partne | 17 | 207 | $473 | $390 | $440 | $540 |
| | Associate Lawyer | 17 | 202 | $318 | $250 | $300 | $375 |
| | Staff Lawyer | 4 | 7 | $376 | $285 | $415 | $475 |
| | Of Counsel | 13 | 88 | $450 | $360 | $405 | $510 |
| Female | Equity Partner/Shareholder/Proprietor | 15 | 101 | $441 | $350 | $435 | $525 |
| | Non-equity Partner/Salaried Partner/Non-Participating Partne | 14 | 103 | $437 | $350 | $425 | $495 |
| | Associate Lawyer | 17 | 203 | $304 | $225 | $275 | $350 |
| | Staff Lawyer | 5 | 10 | $312 | $255 | $320 | $375 |
| | Of Counsel | 9 | 26 | $386 | $325 | $375 | $460 |

**GENDER BY YEARS OF LEGAL EXPERIENCE**
**STANDARD HOURLY BILLING RATES**
As of January 1, 2021

| | | Number of Offices | Number of Lawyers | Rate | | | |
|---|---|---|---|---|---|---|---|
| | | | | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ |
| Male | Under 2 years | 11 | 25 | $241 | $200 | $215 | $250 |
| | 2 or 3 years | 10 | 29 | $272 | $225 | $250 | $295 |
| | 4 or 5 years | 11 | 41 | $286 | $250 | $275 | $310 |
| | 6 or 7 years | 12 | 37 | $358 | $300 | $325 | $395 |
| | 8 to 10 years | 15 | 55 | $342 | $295 | $335 | $375 |
| | 11 to 15 years | 14 | 105 | $387 | $330 | $385 | $420 |
| | 16 to 20 years | 15 | 87 | $442 | $375 | $425 | $480 |
| | 21 to 30 years | 17 | 204 | $467 | $385 | $450 | $523 |
| | 31 or more years | 16 | 312 | $519 | $415 | $495 | $590 |
| Female | Under 2 years | 8 | 21 | $224 | $195 | $210 | $220 |
| | 2 or 3 years | 13 | 52 | $250 | $215 | $225 | $275 |
| | 4 or 5 years | 11 | 28 | $283 | $250 | $260 | $303 |
| | 6 or 7 years | 13 | 42 | $305 | $260 | $290 | $335 |
| | 8 to 10 years | 12 | 39 | $356 | $310 | $345 | $375 |
| | 11 to 15 years | 16 | 66 | $395 | $325 | $375 | $420 |
| | 16 to 20 years | 16 | 52 | $408 | $350 | $410 | $450 |
| | 21 to 30 years | 13 | 75 | $444 | $360 | $450 | $495 |
| | 31 or more years | 14 | 50 | $499 | $430 | $488 | $570 |

**ETHNICITY**
**STANDARD HOURLY BILLING RATES**
**As of January 1, 2021**

| Ethnicity/Status | | Number of Offices | Number of Lawyers | Rate | | | |
|---|---|---|---|---|---|---|---|
| | | | | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ |
| African American or Black | Equity Partner/Shareholder/Proprietor | 3 | 3 | $362 | $345 | $350 | $390 |
| | Non-equity Partner/Salaried Partner/Non-Participating Partne | 3 | 8 | $479 | $373 | $470 | $595 |
| | Associate Lawyer | 6 | 37 | $328 | $275 | $310 | $350 |
| | Of Counsel | 4 | 4 | $303 | $216 | $303 | $390 |
| Asian or Pacific Islander | Equity Partner/Shareholder/Proprietor | 2 | 2 | $458 | $345 | $458 | $570 |
| | Non-equity Partner/Salaried Partner/Non-Participating Partne | 3 | 4 | $464 | $410 | $450 | $518 |
| | Associate Lawyer | 4 | 17 | $316 | $260 | $295 | $350 |
| Hispanic or Latino | Equity Partner/Shareholder/Proprietor | 4 | 4 | $444 | $378 | $465 | $510 |
| | Non-equity Partner/Salaried Partner/Non-Participating Partne | 3 | 6 | $411 | $340 | $415 | $475 |
| | Associate Lawyer | 6 | 12 | $310 | $243 | $328 | $355 |
| Multiracial | Equity Partner/Shareholder/Proprietor | 2 | 2 | $538 | $535 | $538 | $540 |
| | Non-equity Partner/Salaried Partner/Non-Participating Partne | 2 | 2 | $438 | $350 | $438 | $525 |
| | Associate Lawyer | 4 | 7 | $319 | $220 | $295 | $390 |
| Caucasian, including Middle Eastern | Equity Partner/Shareholder/Proprietor | 10 | 388 | $488 | $400 | $475 | $565 |
| | Non-equity Partner/Salaried Partner/Non-Participating Partne | 10 | 202 | $455 | $385 | $438 | $510 |
| | Associate Lawyer | 10 | 211 | $300 | $250 | $295 | $340 |
| | Staff Lawyer | 3 | 8 | $408 | $360 | $395 | $445 |
| | Of Counsel | 8 | 62 | $482 | $375 | $450 | $550 |

**REGION**
**STANDARD HOURLY BILLING RATES**
**As of January 1, 2021**

| Region/Status | | Number of Offices | Number of Lawyers | Rate | | | |
|---|---|---|---|---|---|---|---|
| | | | | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ |
| Northeast | Equity Partner/Shareholder/Proprietor | 6 | 230 | $520 | $445 | $508 | $590 |
| | Non-equity Partner/Salaried Partner/Non-Participating Partner | 6 | 203 | $475 | $400 | $450 | $540 |
| | Associate/Staff Lawyer | 1 | 204 | $334 | $263 | $313 | $375 |
| | Of Counsel | 5 | 51 | $473 | $400 | $455 | $525 |
| Midwest | Equity Partner/Shareholder/Proprietor | 6 | 136 | $396 | $320 | $378 | $460 |
| | Non-equity Partner/Salaried Partner/Non-Participating Partner | 5 | 59 | $391 | $315 | $375 | $450 |
| | Associate/Staff Lawyer | 6 | 101 | $249 | $200 | $225 | $275 |
| | Of Counsel | 3 | 23 | $330 | $300 | $350 | $390 |
| South | Equity Partner/Shareholder/Proprietor | 4 | 144 | $502 | $385 | $450 | $588 |
| | Non-equity Partner/Salaried Partner/Non-Participating Partner | 4 | 40 | $518 | $418 | $468 | $573 |
| | Associate/Staff Lawyer | 4 | 87 | $346 | $265 | $350 | $410 |
| | Of Counsel | 3 | 25 | $487 | $375 | $400 | $525 |
| West | Equity Partner/Shareholder/Proprietor | 2 | 27 | $366 | $350 | $350 | $370 |
| | Non-equity Partner/Salaried Partner/Non-Participating Partner | 2 | 8 | $359 | $325 | $350 | $388 |
| | Associate/Staff Lawyer | 2 | 30 | $277 | $260 | $260 | $295 |
| | Of Counsel | 2 | 15 | $381 | $350 | $350 | $375 |

**REGION BY YEARS OF LEGAL EXPERIENCE**
**STANDARD HOURLY BILLING RATES**
**As of January 1, 2021**

| Region/Years of Experience | | Number of Offices | Number of Lawyers | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ |
|---|---|---|---|---|---|---|---|
| Northeast | Under 2 years | 5 | 19 | $246 | $215 | $220 | $290 |
| | 2 or 3 years | 4 | 36 | $280 | $223 | $248 | $295 |
| | 4 or 5 years | 4 | 32 | $302 | $258 | $275 | $328 |
| | 6 or 7 years | 6 | 37 | $332 | $275 | $310 | $340 |
| | 8 to 10 years | 5 | 50 | $361 | $315 | $340 | $375 |
| | 11 to 15 years | 6 | 90 | $420 | $350 | $405 | $440 |
| | 16 to 20 years | 6 | 72 | $442 | $380 | $430 | $488 |
| | 21 to 30 years | 6 | 150 | $491 | $430 | $475 | $540 |
| | 31 or more years | 5 | 201 | $546 | $480 | $540 | $615 |
| Midwest | Under 2 years | 5 | 19 | $193 | $180 | $195 | $195 |
| | 2 or 3 years | 6 | 26 | $222 | $200 | $220 | $242 |
| | 4 or 5 years | 4 | 18 | $247 | $215 | $230 | $275 |
| | 6 or 7 years | 4 | 16 | $288 | $258 | $300 | $318 |
| | 8 to 10 years | 6 | 25 | $310 | $260 | $300 | $340 |
| | 11 to 15 years | 6 | 43 | $337 | $295 | $330 | $400 |
| | 16 to 20 years | 6 | 37 | $388 | $325 | $415 | $435 |
| | 21 to 30 years | 5 | 65 | $388 | $315 | $375 | $460 |
| | 31 or more years | 5 | 66 | $433 | $350 | $400 | $540 |
| South | Under 2 years | 3 | 5 | $330 | $200 | $350 | $400 |
| | 2 or 3 years | 3 | 12 | $259 | $200 | $238 | $318 |
| | 4 or 5 years | 4 | 10 | $297 | $250 | $250 | $350 |
| | 6 or 7 years | 4 | 19 | $378 | $300 | $385 | $420 |
| | 8 to 10 years | 3 | 15 | $372 | $300 | $375 | $430 |
| | 11 to 15 years | 4 | 33 | $391 | $325 | $375 | $440 |
| | 16 to 20 years | 3 | 25 | $475 | $400 | $450 | $570 |
| | 21 to 30 years | 4 | 45 | $510 | $400 | $450 | $625 |
| | 31 or more years | 4 | 74 | $539 | $400 | $450 | $575 |
| West | Under 2 years | 1 | 3 | $250 | $250 | $250 | $250 |
| | 2 or 3 years | 1 | 7 | $276 | $250 | $260 | $295 |
| | 4 or 5 years | 1 | 9 | $281 | $260 | $260 | $295 |
| | 6 or 7 years | 1 | 7 | $283 | $260 | $295 | $295 |
| | 8 to 10 years | 2 | 4 | $331 | $313 | $338 | $350 |
| | 11 to 15 years | 1 | 5 | $304 | $295 | $325 | $325 |
| | 16 to 20 years | 2 | 5 | $317 | $295 | $300 | $350 |
| | 21 to 30 years | 2 | 19 | $355 | $325 | $350 | $375 |
| | 31 or more years | 2 | 21 | $400 | $350 | $360 | $425 |

**FIRM SIZE**
**STANDARD HOURLY BILLING RATES**
**As of January 1, 2021**

| Firm Size/Status | | Number of Offices | Number of Lawyers | Rate | | | |
|---|---|---|---|---|---|---|---|
| | | | | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ |
| 1 to 9 Lawyers | Equity Partner/Shareholder/Proprietor | 3 | 6 | $344 | $229 | $329 | $475 |
| | Non-equity Partner/Salaried Partner/Non-Participating Partne | 3 | 5 | $372 | $400 | $400 | $425 |
| | Associate/Staff Lawyer | 3 | 8 | $297 | $229 | $313 | $350 |
| 10 to 24 Lawyers | Equity Partner/Shareholder/Proprietor | 3 | 24 | $571 | $355 | $440 | $760 |
| | Non-equity Partner/Salaried Partner/Non-Participating Partne | 3 | 5 | $538 | $380 | $380 | $410 |
| | Associate/Staff Lawyer | 3 | 20 | $277 | $180 | $238 | $313 |
| 41 to 75 Lawyers | Equity Partner/Shareholder/Proprietor | 6 | 138 | $418 | $325 | $370 | $485 |
| | Non-equity Partner/Salaried Partner/Non-Participating Partne | 6 | 65 | $410 | $325 | $395 | $440 |
| | Associate/Staff Lawyer | 6 | 111 | $278 | $220 | $260 | $305 |
| 76 to 150 Lawyers | Equity Partner/Shareholder/Proprietor | 4 | 168 | $465 | $390 | $450 | $540 |
| | Non-equity Partner/Salaried Partner/Non-Participating Partne | 4 | 71 | $520 | $425 | $535 | $595 |
| | Associate/Staff Lawyer | 4 | 139 | $355 | $250 | $350 | $420 |
| Over 150 Lawyers | Equity Partner/Shareholder/Proprietor | 2 | 201 | $519 | $440 | $510 | $590 |
| | Non-equity Partner/Salaried Partner/Non-Participating Partne | 2 | 164 | $456 | $395 | $440 | $508 |
| | Associate/Staff Lawyer | 2 | 144 | $303 | $253 | $295 | $340 |

**FIRM SIZE BY YEARS OF LEGAL EXPERIENCE**
**STANDARD HOURLY BILLING RATES**
As of January 1, 2021

| Firm Size/Years of Experience | | Number of Offices | Number of Lawyers | Rate | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ |
| 1 to 9 Lawyers | Under 2 years | 1 | 2 | $215 | $215 | $215 | $215 |
| | 8 to 10 years | 2 | 3 | $248 | $206 | $212 | $325 |
| | 11 to 15 years | 2 | 4 | $304 | $221 | $307 | $388 |
| | 16 to 20 years | 3 | 4 | $332 | $265 | $338 | $400 |
| | 21 to 30 years | 2 | 2 | $413 | $400 | $413 | $425 |
| | 31 or more years | 2 | 5 | $397 | $350 | $425 | $475 |
| 10 to 24 Lawyers | Under 2 years | 3 | 4 | $254 | $193 | $223 | $315 |
| | 2 or 3 years | 1 | 3 | $180 | $180 | $180 | $180 |
| | 6 or 7 years | 2 | 3 | $450 | $240 | $555 | $555 |
| | 8 to 10 years | 2 | 4 | $288 | $278 | $288 | $298 |
| | 11 to 15 years | 3 | 5 | $389 | $310 | $310 | $410 |
| | 16 to 20 years | 2 | 5 | $331 | $320 | $330 | $355 |
| | 21 to 30 years | 3 | 12 | $493 | $380 | $428 | $655 |
| | 31 or more years | 2 | 14 | $795 | $445 | $798 | $1,220 |
| 41 to 75 Lawyers | Under 2 years | 6 | 16 | $232 | $183 | $195 | $250 |
| | 2 or 3 years | 6 | 24 | $249 | $200 | $250 | $273 |
| | 4 or 5 years | 6 | 23 | $255 | $215 | $260 | $265 |
| | 6 or 7 years | 6 | 22 | $294 | $260 | $295 | $305 |
| | 8 to 10 years | 6 | 21 | $313 | $260 | $300 | $350 |
| | 11 to 15 years | 6 | 51 | $358 | $300 | $335 | $410 |
| | 16 to 20 years | 6 | 35 | $426 | $325 | $425 | $475 |
| | 21 to 30 years | 6 | 79 | $409 | $325 | $370 | $465 |
| | 31 or more years | 6 | 89 | $428 | $350 | $390 | $485 |
| 76 to 150 Lawyers | Under 2 years | 2 | 10 | $200 | $195 | $195 | $200 |
| | 2 or 3 years | 4 | 26 | $283 | $215 | $243 | $345 |
| | 4 or 5 years | 4 | 19 | $306 | $250 | $275 | $345 |
| | 6 or 7 years | 4 | 25 | $368 | $300 | $360 | $400 |
| | 8 to 10 years | 4 | 28 | $401 | $340 | $373 | $465 |
| | 11 to 15 years | 4 | 47 | $429 | $350 | $405 | $475 |
| | 16 to 20 years | 4 | 38 | $455 | $395 | $430 | $500 |
| | 21 to 30 years | 4 | 68 | $484 | $400 | $475 | $540 |
| | 31 or more years | 4 | 94 | $490 | $410 | $468 | $570 |
| Over 150 Lawyers | Under 2 years | 2 | 14 | $256 | $220 | $235 | $295 |
| | 2 or 3 years | 2 | 27 | $250 | $220 | $240 | $295 |
| | 4 or 5 years | 2 | 26 | $288 | $255 | $275 | $310 |
| | 6 or 7 years | 2 | 28 | $311 | $275 | $300 | $340 |
| | 8 to 10 years | 2 | 38 | $342 | $325 | $340 | $370 |
| | 11 to 15 years | 2 | 64 | $392 | $345 | $390 | $420 |
| | 16 to 20 years | 2 | 57 | $429 | $380 | $430 | $475 |
| | 21 to 30 years | 2 | 118 | $479 | $430 | $470 | $530 |
| | 31 or more years | 2 | 160 | $559 | $495 | $550 | $620 |

**POPULATION AREA**
**STANDARD HOURLY BILLING RATES**
**As of January 1, 2021**

| Population Area/Status | | Number of Offices | Number of Lawyers | Rate | | | |
|---|---|---|---|---|---|---|---|
| | | | | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ |
| Metropolitan | Equity Partner/Shareholder/Proprietor | 11 | 402 | $443 | $360 | $425 | $495 |
| | Non-equity Partner/Salaried Partner/Non-Participating Partner | 11 | 188 | $421 | $343 | $410 | $453 |
| | Associate/Staff Lawyer | 11 | 274 | $270 | $220 | $260 | $300 |
| Metropolitan Division | Equity Partner/Shareholder/Proprietor | 7 | 135 | $576 | $515 | $575 | $625 |
| | Non-equity Partner/Salaried Partner/Non-Participating Partner | 7 | 122 | $523 | $435 | $495 | $595 |
| | Associate/Staff Lawyer | 7 | 148 | $390 | $330 | $375 | $438 |

**POPULATION AREA BY YEARS OF LEGAL EXPERIENCE**
**STANDARD HOURLY BILLING RATES**
**As of January 1, 2021**

| Population Area/Years of Experience | | Number of Offices | Number of Lawyers | Rate | | | |
|---|---|---|---|---|---|---|---|
| | | | | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ |
| Metropolitan | Under 2 years | 10 | 35 | $212 | $190 | $200 | $220 |
| | 2 or 3 years | 9 | 63 | $232 | $210 | $225 | $250 |
| | 4 or 5 years | 9 | 55 | $268 | $250 | $260 | $275 |
| | 6 or 7 years | 9 | 56 | $299 | $273 | $295 | $315 |
| | 8 to 10 years | 10 | 60 | $325 | $298 | $330 | $348 |
| | 11 to 15 years | 10 | 117 | $359 | $325 | $350 | $400 |
| | 16 to 20 years | 10 | 88 | $388 | $350 | $400 | $435 |
| | 21 to 30 years | 11 | 195 | $425 | $355 | $425 | $475 |
| | 31 or more years | 10 | 255 | $492 | $400 | $475 | $550 |
| Metropolitan Division | Under 2 years | 4 | 11 | $301 | $215 | $295 | $350 |
| | 2 or 3 years | 5 | 18 | $347 | $295 | $338 | $400 |
| | 4 or 5 years | 4 | 14 | $349 | $325 | $343 | $380 |
| | 6 or 7 years | 6 | 23 | $404 | $340 | $395 | $475 |
| | 8 to 10 years | 6 | 34 | $388 | $330 | $370 | $435 |
| | 11 to 15 years | 7 | 54 | $457 | $400 | $430 | $510 |
| | 16 to 20 years | 7 | 51 | $499 | $430 | $480 | $575 |
| | 21 to 30 years | 6 | 84 | $543 | $468 | $515 | $605 |
| | 31 or more years | 6 | 107 | $573 | $490 | $580 | $650 |

**YEAR ADMITTED TO BAR**
**STANDARD HOURLY BILLING RATES**
**As of January 1, 2021**

| Year Admitted to Bar | Number of Offices | Number of Lawyers | Rate | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ |
| Before 1980 | 16 | 136 | $525 | $400 | $500 | $618 |
| 1980-1984 | 14 | 111 | $512 | $430 | $495 | $575 |
| 1985-1988 | 15 | 91 | $503 | $405 | $490 | $570 |
| 1989-1993 | 16 | 121 | $493 | $400 | $475 | $570 |
| 1994-1998 | 15 | 152 | $448 | $375 | $443 | $500 |
| 1999-2003 | 17 | 138 | $438 | $375 | $430 | $485 |
| 2004-2008 | 16 | 156 | $401 | $335 | $400 | $438 |
| 2009-2012 | 17 | 140 | $353 | $300 | $340 | $385 |
| 2013-2016 | 15 | 148 | $309 | $260 | $295 | $340 |
| 2017-2020 | 17 | 127 | $249 | $200 | $225 | $275 |

**YEARS OF LEGAL EXPERIENCE**
**STANDARD HOURLY BILLING RATES**
**As of January 1, 2021**

| Yeas of Experience | Number of Offices | Number of Lawyers | Rate | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ |
| Under 2 years | 14 | 46 | $234 | $195 | $215 | $250 |
| 2 or 3 years | 14 | 81 | $258 | $220 | $240 | $275 |
| 4 or 5 years | 13 | 69 | $284 | $250 | $265 | $310 |
| 6 or 7 years | 15 | 79 | $330 | $275 | $305 | $350 |
| 8 to 10 years | 16 | 94 | $348 | $300 | $340 | $375 |
| 11 to 15 years | 17 | 171 | $390 | $330 | $375 | $420 |
| 16 to 20 years | 17 | 139 | $429 | $370 | $425 | $475 |
| 21 to 30 years | 17 | 279 | $461 | $380 | $450 | $515 |
| 31 or more years | 16 | 362 | $516 | $420 | $495 | $580 |

**INDIVIDUAL NON-LITIGATION SPECIALTIES**
**STANDARD HOURLY BILLING RATES**
**As of January 1, 2021**

| Specialty/Status | | Number of Offices | Number of Lawyers | Rate | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ |
| Administrative/Legislative/Regulatory | Partner/Shareholder- Equity/Non-Equity | 3 | 7 | $507 | $480 | $515 | $580 |
| Banking | Partner/Shareholder- Equity/Non-Equity | 2 | 5 | $445 | $460 | $465 | $465 |
| Bankruptcy | Partner/Shareholder- Equity/Non-Equity | 4 | 7 | $478 | $310 | $490 | $565 |
| Commercial/Contracts | Partner/Shareholder- Equity/Non-Equity | 3 | 8 | $561 | $480 | $570 | $660 |
| | Associate/Staff Lawyer | 2 | 3 | $320 | $280 | $330 | $350 |
| Education | Partner/Shareholder- Equity/Non-Equity | 1 | 2 | $245 | $245 | $245 | $245 |
| | Associate/Staff Lawyer | 1 | 4 | $210 | $195 | $210 | $225 |
| Employee Benefits (ERISA) | Partner/Shareholder- Equity/Non-Equity | 5 | 13 | $630 | $390 | $550 | $810 |
| | Associate/Staff Lawyer | 3 | 6 | $364 | $235 | $325 | $555 |
| Employment (FLSA, ADA, ADEA) | Partner/Shareholder- Equity/Non-Equity | 5 | 27 | $468 | $420 | $460 | $540 |
| | Associate/Staff Lawyer | 5 | 15 | $269 | $215 | $275 | $320 |
| Environmental | Partner/Shareholder- Equity/Non-Equity | 1 | 3 | $370 | $330 | $380 | $400 |
| Family Law/Domestic Relations | Partner/Shareholder- Equity/Non-Equity | 3 | 35 | $457 | $400 | $450 | $495 |
| | Associate/Staff Lawyer | 4 | 19 | $288 | $265 | $285 | $305 |
| General Business | Partner/Shareholder- Equity/Non-Equity | 5 | 38 | $440 | $330 | $390 | $485 |
| | Associate/Staff Lawyer | 6 | 19 | $266 | $200 | $225 | $310 |
| Health Care | Partner/Shareholder- Equity/Non-Equity | 2 | 3 | $482 | $300 | $525 | $620 |
| | Associate/Staff Lawyer | 1 | 2 | $338 | $325 | $338 | $350 |
| Intellectual Property | Partner/Shareholder- Equity/Non-Equity | 4 | 32 | $442 | $385 | $430 | $498 |
| | Associate/Staff Lawyer | 3 | 18 | $241 | $180 | $235 | $275 |
| Labor/Collective Bargaining (Mgmt.) | Partner/Shareholder- Equity/Non-Equity | 2 | 5 | $424 | $300 | $475 | $505 |
| Mergers/Acquisitions | Partner/Shareholder- Equity/Non-Equity | 3 | 5 | $477 | $490 | $500 | $500 |
| | Associate/Staff Lawyer | 2 | 5 | $311 | $250 | $295 | $295 |
| Municipal Finance | Partner/Shareholder- Equity/Non-Equity | 3 | 17 | $511 | $450 | $510 | $580 |
| | Associate/Staff Lawyer | 2 | 3 | $262 | $255 | $255 | $275 |
| Real Estate | Partner/Shareholder- Equity/Non-Equity | 7 | 41 | $489 | $435 | $475 | $525 |
| | Associate/Staff Lawyer | 6 | 13 | $318 | $275 | $275 | $405 |
| Securities | Partner/Shareholder- Equity/Non-Equity | 2 | 5 | $463 | $375 | $385 | $530 |
| Taxation | Partner/Shareholder- Equity/Non-Equity | 6 | 15 | $606 | $475 | $595 | $760 |
| | Associate/Staff Lawyer | 3 | 2 | $365 | $270 | $365 | $460 |
| Trusts/Estates/Probate | Partner/Shareholder- Equity/Non-Equity | 7 | 23 | $471 | $410 | $475 | $570 |
| | Associate/Staff Lawyer | 5 | 8 | $311 | $215 | $310 | $383 |
| Other Non-litigation Specialty | Partner/Shareholder- Equity/Non-Equity | 5 | 16 | $556 | $350 | $560 | $800 |
| | Associate/Staff Lawyer | 3 | 15 | $494 | $310 | $570 | $600 |
| Multiple Non-litigation Specialties | Partner/Shareholder- Equity/Non-Equity | 3 | 47 | $505 | $375 | $475 | $605 |
| | Associate/Staff Lawyer | 3 | 18 | $302 | $275 | $295 | $340 |

**INDIVIDUAL NON-LITIGATION SPECIALTIES BY YEARS OF LEGAL EXPERIENCE**
**STANDARD HOURLY BILLING RATES**
**As of January 1, 2021**

| Specialty/Years of Experience | | Number of Offices | Number of Lawyers | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ |
|---|---|---|---|---|---|---|---|
| Administrative/Legislative/ Regulatory | 21 to 30 years | 2 | 2 | $368 | $255 | $368 | $480 |
| | 31 or more years | 2 | 4 | $621 | $543 | $610 | $700 |
| Banking | 11 to 15 years | 1 | 2 | $398 | $335 | $398 | $460 |
| Bankruptcy | 8 to 10 years | 2 | 2 | $430 | $295 | $430 | $565 |
| | 11 to 15 years | 2 | 3 | $427 | $350 | $440 | $490 |
| | 21 to 30 years | 2 | 2 | $463 | $410 | $463 | $515 |
| | 31 or more years | 3 | 3 | $505 | $360 | $425 | $730 |
| Commercial/Contracts | 16 to 20 years | 2 | 2 | $518 | $350 | $518 | $685 |
| | 21 to 30 years | 2 | 2 | $460 | $380 | $460 | $540 |
| | 31 or more years | 3 | 6 | $558 | $490 | $555 | $640 |
| Education | Under 2 years | 1 | 2 | $195 | $195 | $195 | $195 |
| | 31 or more years | 2 | 2 | $448 | $405 | $448 | $490 |
| Employee Benefits (ERISA) | Under 2 years | 2 | 2 | $295 | $190 | $295 | $400 |
| | 6 or 7 years | 1 | 2 | $555 | $555 | $555 | $555 |
| | 8 to 10 years | 1 | 2 | $320 | $250 | $320 | $390 |
| | 11 to 15 years | 1 | 2 | $320 | $305 | $320 | $335 |
| | 21 to 30 years | 3 | 3 | $618 | $495 | $550 | $810 |
| | 31 or more years | 3 | 7 | $795 | $560 | $615 | $1,220 |
| Employment (FLSA, ADA, ADEA) | Under 2 years | 3 | 4 | $206 | $195 | $215 | $218 |
| | 2 or 3 years | 2 | 3 | $213 | $200 | $215 | $225 |
| | 4 or 5 years | 1 | 2 | $293 | $275 | $293 | $310 |
| | 6 or 7 years | 2 | 2 | $323 | $320 | $323 | $325 |
| | 8 to 10 years | 2 | 2 | $295 | $295 | $295 | $295 |
| | 11 to 15 years | 4 | 7 | $377 | $360 | $375 | $415 |
| | 16 to 20 years | 2 | 6 | $424 | $415 | $430 | $435 |
| | 21 to 30 years | 3 | 9 | $487 | $460 | $475 | $520 |
| | 31 or more years | 3 | 8 | $530 | $453 | $575 | $575 |
| Environmental | 21 to 30 years | 1 | 2 | $355 | $330 | $355 | $380 |
| Family Law/Domestic Relations | Under 2 years | 1 | 2 | $218 | $180 | $218 | $255 |
| | 2 or 3 years | 1 | 3 | $268 | $265 | $265 | $275 |
| | 4 or 5 years | 2 | 2 | $280 | $275 | $280 | $285 |
| | 6 or 7 years | 2 | 6 | $288 | $255 | $305 | $315 |
| | 8 to 10 years | 2 | 5 | $327 | $305 | $325 | $345 |
| | 11 to 15 years | 2 | 11 | $385 | $385 | $400 | $410 |
| | 16 to 20 years | 2 | 5 | $426 | $435 | $450 | $450 |
| | 21 to 30 years | 2 | 11 | $473 | $440 | $490 | $545 |
| | 31 or more years | 2 | 10 | $510 | $475 | $490 | $500 |
| General Business | Under 2 years | 3 | 5 | $212 | $190 | $195 | $200 |
| | 2 or 3 years | 3 | 4 | $219 | $213 | $225 | $225 |
| | 4 or 5 years | 3 | 3 | $263 | $215 | $265 | $310 |
| | 6 or 7 years | 3 | 5 | $307 | $310 | $320 | $360 |
| | 11 to 15 years | 3 | 7 | $362 | $300 | $360 | $450 |
| | 16 to 20 years | 4 | 10 | $448 | $325 | $393 | $585 |
| | 21 to 30 years | 3 | 10 | $424 | $300 | $373 | $425 |
| | 31 or more years | 5 | 17 | $459 | $360 | $435 | $525 |
| Health Care | 21 to 30 years | 3 | 4 | $430 | $313 | $400 | $548 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Intellectual Property | Under 2 years | 2 | 2 | $203 | $170 | $203 | $235 |
| | 8 to 10 years | 3 | 4 | $319 | $255 | $315 | $383 |
| | 11 to 15 years | 2 | 6 | $404 | $310 | $350 | $430 |
| | 16 to 20 years | 2 | 8 | $384 | $338 | $415 | $430 |
| | 21 to 30 years | 3 | 15 | $454 | $395 | $455 | $500 |
| | 31 or more years | 4 | 7 | $522 | $450 | $500 | $595 |
| Labor/Collective Bargaining (Mgmt.) | 21 to 30 years | 2 | 4 | $455 | $383 | $490 | $528 |
| Mergers/Acquisitions | 2 or 3 years | 1 | 2 | $238 | $225 | $238 | $250 |
| | 8 to 10 years | 1 | 2 | $435 | $370 | $435 | $500 |
| | 31 or more years | 2 | 2 | $508 | $490 | $508 | $525 |
| Municipal Finance | 8 to 10 years | 2 | 2 | $300 | $275 | $300 | $325 |
| | 11 to 15 years | 1 | 3 | $375 | $345 | $375 | $405 |
| | 16 to 20 years | 1 | 2 | $508 | $475 | $508 | $540 |
| | 21 to 30 years | 2 | 2 | $458 | $450 | $458 | $465 |
| | 31 or more years | 1 | 9 | $590 | $510 | $580 | $630 |
| Real Estate | Under 2 years | 2 | 2 | $213 | $210 | $213 | $215 |
| | 2 or 3 years | 2 | 2 | $275 | $275 | $275 | $275 |
| | 4 or 5 years | 3 | 3 | $317 | $275 | $275 | $400 |
| | 6 or 7 years | 2 | 2 | $273 | $270 | $273 | $275 |
| | 11 to 15 years | 4 | 5 | $408 | $405 | $420 | $430 |
| | 16 to 20 years | 5 | 12 | $471 | $435 | $468 | $500 |
| | 21 to 30 years | 4 | 10 | $470 | $455 | $473 | $480 |
| | 31 or more years | 7 | 21 | $505 | $435 | $510 | $550 |
| Securities | 21 to 30 years | 2 | 3 | $427 | $375 | $375 | $530 |
| | 31 or more years | 2 | 3 | $478 | $385 | $400 | $650 |
| Taxation | 4 or 5 years | 2 | 1 | $460 | $460 | $460 | $460 |
| | 11 to 15 years | 2 | 2 | $445 | $270 | $445 | $620 |
| | 16 to 20 years | 3 | 3 | $442 | $425 | $425 | $475 |
| | 21 to 30 years | 4 | 7 | $561 | $425 | $570 | $655 |
| | 31 or more years | 4 | 6 | $764 | $595 | $780 | $915 |
| Trusts/Estates/Probate | 2 or 3 years | 3 | 4 | $255 | $200 | $238 | $310 |
| | 11 to 15 years | 6 | 7 | $401 | $330 | $410 | $420 |
| | 16 to 20 years | 1 | 2 | $405 | $395 | $405 | $415 |
| | 21 to 30 years | 4 | 7 | $459 | $360 | $475 | $550 |
| | 31 or more years | 4 | 12 | $504 | $450 | $528 | $578 |
| Other Non-litigation Specialty | 4 or 5 years | 2 | 2 | $293 | $275 | $293 | $310 |
| | 6 or 7 years | 2 | 3 | $468 | $295 | $510 | $600 |
| | 8 to 10 years | 2 | 2 | $450 | $300 | $450 | $600 |
| | 11 to 15 years | 2 | 5 | $597 | $570 | $600 | $600 |
| | 16 to 20 years | 4 | 7 | $523 | $375 | $580 | $600 |
| | 21 to 30 years | 3 | 7 | $554 | $315 | $570 | $800 |
| | 31 or more years | 4 | 8 | $540 | $400 | $475 | $705 |
| Multiple Non-litigation Specialties | 2 or 3 years | 2 | 4 | $264 | $243 | $260 | $285 |
| | 4 or 5 years | 1 | 3 | $293 | $275 | $295 | $310 |
| | 6 or 7 years | 3 | 6 | $329 | $285 | $310 | $345 |
| | 8 to 10 years | 1 | 4 | $355 | $335 | $358 | $375 |
| | 11 to 15 years | 3 | 12 | $363 | $340 | $365 | $398 |
| | 16 to 20 years | 1 | 3 | $370 | $340 | $350 | $420 |
| | 21 to 30 years | 2 | 13 | $454 | $420 | $475 | $495 |
| | 31 or more years | 3 | 26 | $577 | $510 | $600 | $625 |

**INDIVIDUAL LITIGATION SPECIALTIES**
**STANDARD HOURLY BILLING RATES**
**As of January 1, 2021**

| Specialty/Status | | Number of Offices | Number of Lawyers | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ |
|---|---|---|---|---|---|---|---|
| Bankruptcy | Partner/Shareholder- Equity/Non-Equity | 3 | 13 | $671 | $635 | $690 | $690 |
| | Associate/Staff Lawyer | 3 | 9 | $419 | $395 | $450 | $460 |
| Collections | Partner/Shareholder- Equity/Non-Equity | 3 | 17 | $410 | $370 | $385 | $435 |
| | Associate/Staff Lawyer | 2 | 8 | $301 | $268 | $293 | $330 |
| Commercial/Contracts | Partner/Shareholder- Equity/Non-Equity | 4 | 25 | $601 | $425 | $570 | $735 |
| | Associate/Staff Lawyer | 4 | 28 | $381 | $305 | $373 | $440 |
| Education | Partner/Shareholder- Equity/Non-Equity | 1 | 2 | $523 | $465 | $523 | $580 |
| Insured Defense | Partner/Shareholder- Equity/Non-Equity | 3 | 26 | $361 | $325 | $350 | $395 |
| | Associate/Staff Lawyer | 3 | 19 | $264 | $250 | $250 | $295 |
| Employment (FLSA, ADA, ADEA) | Partner/Shareholder- Equity/Non-Equity | 5 | 8 | $436 | $298 | $398 | $575 |
| | Associate/Staff Lawyer | 3 | 7 | $404 | $255 | $450 | $510 |
| Environmental | Partner/Shareholder- Equity/Non-Equity | 3 | 15 | $485 | $400 | $460 | $570 |
| | Associate/Staff Lawyer | 2 | 7 | $284 | $245 | $295 | $300 |
| Family Law/Domestic Relations | Partner/Shareholder- Equity/Non-Equity | 3 | 5 | $446 | $375 | $390 | $475 |
| | Associate/Staff Lawyer | 3 | 4 | $356 | $310 | $333 | $403 |
| Health Care | Partner/Shareholder- Equity/Non-Equity | 1 | 2 | $360 | $360 | $360 | $360 |
| Labor/Collective Bargaining (Mgmt.) | Partner/Shareholder- Equity/Non-Equity | 1 | 22 | $433 | $350 | $428 | $460 |
| | Associate/Staff Lawyer | 1 | 8 | $238 | $213 | $235 | $250 |
| Personal Injury | Partner/Shareholder- Equity/Non-Equity | 5 | 15 | $431 | $330 | $430 | $515 |
| | Associate/Staff Lawyer | 3 | 4 | $269 | $208 | $228 | $330 |
| Products Liability | Partner/Shareholder- Equity/Non-Equity | 2 | 33 | $462 | $440 | $495 | $515 |
| | Associate/Staff Lawyer | 2 | 29 | $360 | $340 | $340 | $405 |
| Trusts/Estates/Probate | Partner/Shareholder- Equity/Non-Equity | 2 | 6 | $543 | $540 | $565 | $590 |
| Other Litigation Specialty | Partner/Shareholder- Equity/Non-Equity | 3 | 19 | $483 | $390 | $455 | $560 |
| | Associate/Staff Lawyer | 3 | 7 | $301 | $240 | $330 | $360 |
| Multiple Litigation Specialties | Partner/Shareholder- Equity/Non-Equity | 7 | 142 | $438 | $345 | $425 | $525 |
| | Associate/Staff Lawyer | 7 | 72 | $266 | $220 | $260 | $298 |
| Multidisciplinary | Partner/Shareholder- Equity/Non-Equity | 4 | 7 | $531 | $435 | $465 | $685 |
| | Associate/Staff Lawyer | 3 | 4 | $383 | $308 | $323 | $458 |

**INDIVIDUAL LITIGATION SPECIALTIES BY YEARS OF LEGAL EXPERIENCE**
**STANDARD HOURLY BILLING RATES**
**As of January 1, 2021**

| Specialty/Years of Experience | | Number of Offices | Number of Lawyers | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ |
|---|---|---|---|---|---|---|---|
| Bankruptcy | 2 or 3 years | 1 | 3 | $433 | $400 | $450 | $450 |
| | 4 or 5 years | 1 | 2 | $388 | $380 | $388 | $395 |
| | 11 to 15 years | 1 | 2 | $690 | $690 | $690 | $690 |
| | 16 to 20 years | 2 | 2 | $643 | $595 | $643 | $690 |
| | 21 to 30 years | 3 | 7 | $636 | $625 | $635 | $690 |
| | 31 or more years | 3 | 4 | $635 | $563 | $678 | $708 |
| Collections | 6 or 7 years | 1 | 2 | $275 | $275 | $275 | $275 |
| | 8 to 10 years | 2 | 6 | $317 | $310 | $330 | $330 |
| | 11 to 15 years | 2 | 4 | $379 | $345 | $390 | $413 |
| | 16 to 20 years | 2 | 6 | $388 | $375 | $380 | $385 |
| | 21 to 30 years | 2 | 2 | $408 | $400 | $408 | $415 |
| | 31 or more years | 3 | 4 | $516 | $450 | $518 | $583 |
| Commercial/Contracts | Under 2 years | 2 | 4 | $389 | $323 | $380 | $455 |
| | 2 or 3 years | 3 | 6 | $317 | $295 | $295 | $350 |
| | 4 or 5 years | 2 | 2 | $340 | $330 | $340 | $350 |
| | 6 or 7 years | 3 | 4 | $375 | $308 | $373 | $443 |
| | 8 to 10 years | 3 | 4 | $394 | $315 | $383 | $473 |
| | 11 to 15 years | 2 | 7 | $464 | $425 | $440 | $525 |
| | 16 to 20 years | 2 | 9 | $486 | $430 | $450 | $545 |
| | 21 to 30 years | 4 | 8 | $606 | $410 | $618 | $798 |
| | 31 or more years | 3 | 10 | $669 | $425 | $685 | $960 |
| Education | 31 or more years | 2 | 2 | $535 | $490 | $535 | $580 |
| Insured Defense | Under 2 years | 2 | 4 | $243 | $235 | $250 | $250 |
| | 2 or 3 years | 3 | 5 | $251 | $242 | $250 | $250 |
| | 4 or 5 years | 2 | 5 | $276 | $250 | $260 | $295 |
| | 6 or 7 years | 1 | 4 | $295 | $295 | $295 | $295 |
| | 8 to 10 years | 2 | 3 | $223 | $206 | $212 | $250 |
| | 11 to 15 years | 3 | 4 | $279 | $221 | $282 | $338 |
| | 16 to 20 years | 3 | 4 | $301 | $262 | $313 | $340 |
| | 21 to 30 years | 2 | 11 | $371 | $325 | $360 | $395 |
| | 31 or more years | 3 | 13 | $404 | $350 | $360 | $480 |
| Employment (FLSA, ADA, ADEA) | 2 or 3 years | 2 | 2 | $338 | $225 | $338 | $450 |
| | 11 to 15 years | 3 | 5 | $505 | $450 | $510 | $585 |
| | 21 to 30 years | 2 | 3 | $370 | $300 | $345 | $465 |
| | 31 or more years | 1 | 2 | $588 | $490 | $588 | $685 |
| Environmental | 2 or 3 years | 2 | 3 | $253 | $220 | $245 | $295 |
| | 6 or 7 years | 1 | 2 | $320 | $300 | $320 | $340 |
| | 11 to 15 years | 1 | 5 | $410 | $400 | $400 | $425 |
| | 21 to 30 years | 2 | 5 | $470 | $445 | $460 | $500 |
| | 31 or more years | 3 | 5 | $574 | $570 | $570 | $575 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Family Law/Domestic Relations | 16 to 20 years | 1 | 2 | $368 | $360 | $368 | $375 |
| | 21 to 30 years | 2 | 4 | $456 | $365 | $428 | $548 |
| Labor/Collective Bargaining (Mgmt.) | 2 or 3 years | 1 | 3 | $215 | $210 | $215 | $220 |
| | 6 or 7 years | 1 | 2 | $250 | $250 | $250 | $250 |
| | 8 to 10 years | 1 | 2 | $320 | $300 | $320 | $340 |
| | 11 to 15 years | 1 | 3 | $335 | $325 | $335 | $345 |
| | 21 to 30 years | 1 | 10 | $451 | $395 | $433 | $460 |
| | 31 or more years | 1 | 7 | $475 | $410 | $445 | $545 |
| Personal Injury | 11 to 15 years | 1 | 2 | $300 | $300 | $300 | $300 |
| | 16 to 20 years | 3 | 3 | $387 | $330 | $400 | $430 |
| | 21 to 30 years | 3 | 4 | $539 | $508 | $530 | $570 |
| | 31 or more years | 5 | 8 | $456 | $368 | $460 | $508 |
| Products Liability | 2 or 3 years | 1 | 2 | $220 | $220 | $220 | $220 |
| | 4 or 5 years | 2 | 2 | $425 | $340 | $425 | $510 |
| | 6 or 7 years | 2 | 7 | $355 | $340 | $340 | $340 |
| | 8 to 10 years | 2 | 7 | $354 | $340 | $340 | $370 |
| | 11 to 15 years | 2 | 7 | $377 | $360 | $375 | $405 |
| | 16 to 20 years | 2 | 8 | $381 | $305 | $375 | $440 |
| | 21 to 30 years | 2 | 16 | $436 | $395 | $440 | $485 |
| | 31 or more years | 2 | 15 | $512 | $495 | $495 | $555 |
| Trusts/Estates/Probate | 21 to 30 years | 2 | 2 | $555 | $540 | $555 | $570 |
| | 31 or more years | 1 | 4 | $570 | $523 | $575 | $618 |
| Other Litigation Specialty | 8 to 10 years | 2 | 4 | $364 | $345 | $368 | $383 |
| | 11 to 15 years | 2 | 3 | $423 | $330 | $380 | $560 |
| | 21 to 30 years | 2 | 7 | $483 | $390 | $430 | $625 |
| | 31 or more years | 1 | 8 | $490 | $443 | $478 | $545 |
| Multiple Litigation Specialties | Under 2 years | 5 | 8 | $199 | $190 | $195 | $215 |
| | 2 or 3 years | 6 | 18 | $231 | $215 | $235 | $245 |
| | 4 or 5 years | 7 | 19 | $259 | $225 | $260 | $265 |
| | 6 or 7 years | 3 | 7 | $281 | $260 | $270 | $305 |
| | 8 to 10 years | 7 | 22 | $319 | $300 | $338 | $345 |
| | 11 to 15 years | 7 | 27 | $345 | $325 | $340 | $405 |
| | 16 to 20 years | 5 | 17 | $427 | $405 | $435 | $465 |
| | 21 to 30 years | 6 | 51 | $430 | $350 | $425 | $505 |
| | 31 or more years | 7 | 64 | $489 | $380 | $488 | $585 |
| Multidisciplinary | 8 to 10 years | 3 | 3 | $410 | $315 | $330 | $585 |
| | 21 to 30 years | 3 | 3 | $483 | $300 | $465 | $685 |
| | 31 or more years | 4 | 6 | $513 | $435 | $508 | $580 |

| Ninth Decile $ |
| --- |
| $630 |
| $628 |
| $440 |
| $475 |
| $590 |

| Ninth Decile $ |
| --- |
| $630 |
| $440 |
| $590 |

| Ninth Decile $ |
|---|
| $640 |
| $650 |
| $435 |
| $520 |
| $615 |
| $580 |
| $580 |
| $440 |
| $388 |
| $490 |

| Ninth Decile $ |
|---|
| $350 |
| $400 |
| $374 |
| $510 |
| $420 |
| $475 |
| $580 |
| $625 |
| $685 |
| $295 |
| $345 |
| $350 |
| $385 |
| $510 |
| $570 |
| $540 |
| $570 |
| $638 |

| Ninth Decile $ |
|---|
| $390 |
| $650 |
| $435 |
| $400 |
| $570 |
| $575 |
| $450 |
| $520 |
| $495 |
| $405 |
| $540 |
| $525 |
| $470 |
| $625 |
| $600 |
| $395 |
| $520 |
| $650 |

| Ninth Decile $ |
| --- |
| $650 |
| $675 |
| $475 |
| $615 |
| $540 |
| $575 |
| $320 |
| $400 |
| $660 |
| $718 |
| $460 |
| $685 |
| $475 |
| $425 |
| $313 |
| $525 |

| Ninth Decile $ |
|---|
| $295 |
| $450 |
| $395 |
| $500 |
| $520 |
| $575 |
| $560 |
| $623 |
| $685 |
| $215 |
| $275 |
| $310 |
| $360 |
| $390 |
| $415 |
| $495 |
| $540 |
| $575 |
| $500 |
| $350 |
| $417 |
| $555 |
| $435 |
| $525 |
| $645 |
| $795 |
| $940 |
| $250 |
| $375 |
| $350 |
| $295 |
| $350 |
| $350 |
| $375 |
| $400 |
| $525 |

| Ninth Decile $ |
| --- |
| $500 |
| $425 |
| $375 |
| $915 |
| $1,220 |
| $508 |
| $595 |
| $525 |
| $400 |
| $595 |
| $685 |
| $510 |
| $645 |
| $600 |
| $375 |

| Ninth Decile $ |
|---|
| $215 |
| $325 |
| $400 |
| $425 |
| $425 |
| $500 |
| $400 |
| $180 |
| $555 |
| $300 |
| $620 |
| $380 |
| $760 |
| $1,220 |
| $350 |
| $295 |
| $325 |
| $315 |
| $395 |
| $450 |
| $595 |
| $560 |
| $590 |
| $215 |
| $450 |
| $400 |
| $510 |
| $565 |
| $600 |
| $640 |
| $625 |
| $595 |
| $295 |
| $295 |
| $340 |
| $350 |
| $375 |
| $450 |
| $525 |
| $610 |
| $678 |

| Ninth Decile $ |
|---|
| $575 |
| $560 |
| $345 |
| $685 |
| $685 |
| $510 |

| Ninth Decile $ |
|---|
| $250 |
| $275 |
| $310 |
| $340 |
| $375 |
| $420 |
| $460 |
| $540 |
| $630 |
| $410 |
| $450 |
| $400 |
| $510 |
| $550 |
| $600 |
| $645 |
| $690 |
| $685 |

| Ninth Decile $ |
|---|
| $720 |
| $615 |
| $680 |
| $665 |
| $570 |
| $575 |
| $510 |
| $435 |
| $400 |
| $345 |

| Ninth Decile $ |
|---|
| $295 |
| $345 |
| $374 |
| $475 |
| $435 |
| $490 |
| $570 |
| $620 |
| $680 |

| Ninth Decile $ |
|---|
| $650 |
| $500 |
| $730 |
| $685 |
| $350 |
| $245 |
| $225 |
| $1,220 |
| $555 |
| $575 |
| $375 |
| $400 |
| $545 |
| $385 |
| $680 |
| $375 |
| $620 |
| $350 |
| $595 |
| $355 |
| $550 |
| $525 |
| $490 |
| $680 |
| $275 |
| $575 |
| $420 |
| $650 |
| $800 |
| $460 |
| $580 |
| $475 |
| $800 |
| $600 |
| $650 |
| $345 |

| Ninth Decile $ |
| --- |
| $480 |
| $750 |
| $460 |
| $565 |
| $490 |
| $515 |
| $730 |
| $685 |
| $540 |
| $680 |
| $195 |
| $490 |
| $400 |
| $555 |
| $390 |
| $335 |
| $810 |
| $1,220 |
| $220 |
| $225 |
| $310 |
| $325 |
| $295 |
| $420 |
| $460 |
| $550 |
| $615 |
| $380 |
| $255 |
| $275 |
| $285 |
| $315 |
| $375 |
| $410 |
| $495 |
| $545 |
| $695 |
| $290 |
| $225 |
| $310 |
| $360 |
| $475 |
| $720 |
| $708 |
| $680 |
| $620 |

| |
|---|
| $235 |
| $410 |
| $690 |
| $435 |
| $595 |
| $650 |
| $550 |
| $250 |
| $500 |
| $525 |
| $325 |
| $405 |
| $540 |
| $465 |
| $770 |
| $215 |
| $275 |
| $400 |
| $275 |
| $450 |
| $520 |
| $523 |
| $590 |
| $530 |
| $650 |
| $460 |
| $620 |
| $475 |
| $760 |
| $940 |
| $345 |
| $570 |
| $415 |
| $570 |
| $590 |
| $310 |
| $600 |
| $600 |
| $800 |
| $800 |
| $800 |
| $800 |
| $295 |
| $310 |
| $450 |
| $375 |
| $410 |
| $420 |
| $520 |
| $740 |

| Ninth Decile $ |
|---|
| $710 |
| $500 |
| $575 |
| $415 |
| $960 |
| $500 |
| $580 |
| $480 |
| $295 |
| $685 |
| $585 |
| $575 |
| $340 |
| $630 |
| $465 |
| $360 |
| $545 |
| $300 |
| $545 |
| $420 |
| $555 |
| $475 |
| $645 |
| $650 |
| $375 |
| $610 |
| $345 |
| $685 |
| $585 |

| Ninth Decile $ |
|---|
| $450 |
| $395 |
| $690 |
| $690 |
| $710 |
| $725 |
| $275 |
| $340 |
| $415 |
| $435 |
| $415 |
| $590 |
| $500 |
| $375 |
| $350 |
| $475 |
| $550 |
| $580 |
| $645 |
| $850 |
| $975 |
| $580 |
| $250 |
| $295 |
| $325 |
| $295 |
| $250 |
| $350 |
| $350 |
| $435 |
| $550 |
| $450 |
| $685 |
| $465 |
| $685 |
| $295 |
| $340 |
| $425 |
| $575 |
| $620 |

| |
|---|
| $375 |
| $630 |
| $220 |
| $250 |
| $340 |
| $345 |
| $595 |
| $570 |
| $300 |
| $430 |
| $595 |
| $650 |
| $220 |
| $510 |
| $510 |
| $405 |
| $405 |
| $540 |
| $540 |
| $570 |
| $570 |
| $645 |
| $390 |
| $560 |
| $680 |
| $650 |
| $220 |
| $260 |
| $325 |
| $310 |
| $365 |
| $420 |
| $540 |
| $550 |
| $675 |
| $585 |
| $685 |
| $685 |

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BONNIE MITCHELL and MICHAEL FRIEDMAN, Derivatively on Behalf of Nominal Defendant BROADWIND ENERGY, INC., <br><br>             Plaintiffs, <br><br>      v. <br><br> DAVID P. REILAND, *et al*., <br><br>             Defendants, <br><br>      and <br><br> BROADWIND ENERGY, INC., <br><br>             Nominal Defendant. | **Case No. 11-CV-01059** |

**<u>STIPULATION AND AGREEMENT OF SETTLEMENT</u>**

This Stipulation of Settlement dated January 10, 2014 (the "Stipulation"), is made and entered into by and among the following Parties (as defined further in ¶1.12 hereof), each by and through their respective counsel: (i) plaintiffs Bonnie Mitchell and Michael Friedman ("Plaintiffs"), on behalf of themselves and derivatively on behalf of Broadwind Energy, Inc. ("Broadwind" or the "Company"); and (ii) nominal defendant Broadwind. This Stipulation is intended by the Parties to fully, finally and forever resolve, discharge and settle the Released Claims (as defined in ¶1.18 hereof), upon and subject to the terms and conditions hereof. Capitalized terms not otherwise defined herein shall have the definitions set forth in ¶¶1.1-1.24 below.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On February 15, 2011, a stockholder derivative action captioned *Bonnie Mitchell v. David P. Reiland, et al.*, No. 11-CV-01059 (the "*Mitchell* Action") was filed in the United States District Court for the Northern District of Illinois, Eastern Division (the "Court"). On February 24, 2011, a second stockholder derivative action captioned *Michael Friedman v. David P. Reiland, et al.*, No. 11-CV-1313 (the "*Friedman* Action") was filed in the Court. On March 3, 2011, a third stockholder derivative action captioned *Jeffrey Hopf v. Peter C. Duprey, et al.*, No. 11-CV-1519 (the "*Hopf* Action") was filed in the Court.

On April 22 and 25, 2011, plaintiffs Jeffrey Hopf and Mitchell and Friedman, respectively, filed motions to consolidate the *Mitchell*, *Friedman* and *Hopf* Actions and to appoint a leadership structure. On April 28, 2011, the Court held a hearing and ordered a briefing schedule, set a hearing on the consolidation and leadership motions, and directed each movant to submit a detailed *in camera* submission in further support of their motion. After full briefing on the motions and the filing of the *in camera* submissions with the Court, on June 21, 2011, the Court held a hearing and granted Plaintiffs' motion, consolidated the *Mitchell*,

*Friedman* and *Hopf* Actions into the Action and appointed Plaintiffs as co-lead plaintiffs. The Court also appointed the law firm Kessler Topaz Meltzer & Check, LLP (formerly known as Barroway Topaz Kessler Meltzer & Check, LLP) as lead counsel. The Court further ordered the Plaintiffs to file a consolidated complaint by July 21, 2011, and to submit a discovery plan by August 2, 2011.

On July 21, 2011, Plaintiffs filed a verified consolidated stockholder derivative complaint (the "Consolidated Complaint"). The Consolidated Complaint alleged, *inter alia*, derivative claims on behalf of Broadwind and against the Individual Defendants and the Tontine Defendants (Broadwind's then-controlling stockholder) for alleged breaches of fiduciary duty relating to Broadwind's January 21, 2010 secondary public offering (the "Offering").

On July 26, 2011 the parties to the Action held a Rule 26(f) conference. Thereafter, on August 2, 2011, the parties filed a Joint Status Report and discovery plan.

On September 18, 2011, Broadwind filed a motion to stay discovery in the Action which the Plaintiffs opposed. On October 21, 2011, the Court granted the discovery stay, but required the parties to proceed with Rule 26(a)(1) mandatory disclosures.

On September 19, 2011, four separate motions to dismiss the Consolidated Complaint were filed by: (i) nominal defendant Broadwind; (ii) defendant J. Cameron Drecoll; (iii) defendants James M. Lindstrom, Charles H. Beynon, David P. Reiland, William T. Fejes, Jr., and Terence P. Fox; and (iv) the Tontine Defendants. These motions sought dismissal of the Action pursuant to Rules 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure. After full briefing on the motions, on May 15, 2012, the Court entered an order granting Defendants' motions to dismiss on the basis that Plaintiffs had failed to successfully plead that a demand on Broadwind's Board of Directors (the "Board") was futile.

Shortly after the Court's dismissal of the Action, on June 28, 2012, Plaintiffs sent a written litigation demand (the "Demand", together with the Action the "Stockholder Derivative Litigation")[1] to the Board pursuant to Rule 23.1 of the Federal Rules of Civil Procedure. The Demand contended that certain directors and officers of Broadwind and the Tontine Defendants breached their fiduciary duties to the Company in connection with the Offering. The Demand demanded that the Board take action against each of the individuals or entities identified therein to recover the alleged damages described therein for the benefit of the Company and to correct the purported deficiencies in the Company's internal controls that allowed the alleged misconduct to occur. By letter dated July 13, 2012, the Board acknowledged receipt of the Demand and advised Plaintiffs that the Board intended to discuss the Demand at the next scheduled Board meeting.

In or around September 2012, the Parties, by and through their respective counsel, entered into arm's-length negotiations with a view towards exploring a potential resolution of the Stockholder Derivative Litigation. In furtherance thereof, Plaintiffs sent the Company a settlement demand dated October 31, 2012. Over the course of the next several months, counsel for Plaintiffs and the Company participated in numerous telephonic meetings and discussions and exchanged multiple drafts of a proposed term sheet to resolve the Stockholder Derivative Litigation. In addition, during the same time period, the Company provided Plaintiffs with certain non-public documents and information in order to allow Plaintiffs to assess the fairness and reasonableness of the proposed settlement. As a result of these extensive arm's-length negotiations, on or about early March 2013, the Parties reached an agreement on all material terms of the Settlement as set forth herein, to the exception of the attorneys' fees and expenses to

---

[1] The Demand is attached hereto as Exhibit A.

be paid to Plaintiffs' Counsel (which the parties had not discussed prior to reaching an agreement on the material terms of the Settlement). Plaintiffs' Counsel and counsel for the Company agreed to pursue mediation before Mr. Jed Melnick, Esq. (the "Mediator") in an attempt to negotiate an appropriate attorneys' fee and expense amount to compensate Plaintiffs' Counsel for the benefits conferred on the Company as a result of the Settlement. On June 28, 2013, the Company, its insurer and Plaintiffs conducted an all-day mediation session before the Mediator. Although the Parties were unable to agree upon an attorneys' fee and expense amount at the conclusion of the mediation, the Parties, with the substantial assistance and oversight of the Mediator, continued their arm's-length negotiations for the next several months and agreed upon an appropriate attorneys' fees and expense amount in October 2013 as set forth in ¶5.1 herein. By resolution dated October 23, 2013, the Board approved entry into the Settlement and its terms, including the attorneys' fee and expense amount to be paid to Plaintiffs' Counsel. The Parties then proceeded to document the Settlement.

## II.     CLAIMS OF THE PLAINTIFFS AND BENEFITS OF THE SETTLEMENT

Plaintiffs believe that the claims they have asserted in the Stockholder Derivative Litigation on behalf of Broadwind have merit. Plaintiffs, however, recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Stockholder Derivative Litigation against the Individual Defendants and the Tontine Defendants through trial and appeals. Plaintiffs and their counsel have also taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Stockholder Derivative Litigation, as well as the difficulties and delays inherent in such litigation. Plaintiffs and their counsel are also mindful of the inherent problems of proof and possible defenses to the claims asserted in the Stockholder Derivative Litigation. Based on their evaluation, Plaintiffs and Plaintiffs' Counsel have determined that the Settlement set forth in this Stipulation is in the best

interests of Broadwind and its stockholders. Plaintiffs' Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon Broadwind and its stockholders. Plaintiffs' Counsel base this conclusion upon, *inter alia*, their extensive investigation during the development, prosecution and settlement of the Stockholder Derivative Litigation, which included, *inter alia*: (i) inspecting, reviewing and analyzing the Company's filings with the Securities and Exchange Commission ("SEC"); (ii) researching corporate governance issues; (iii) researching the applicable law with respect to the claims asserted in the Stockholder Derivative Litigation and the potential defenses thereto; (iv) reviewing non-public documents and other information provided by the Company; and (v) retaining and consulting with an expert.

## III. DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied, and continue to deny, all allegations of any wrongdoing or liability arising from any conduct, statements, acts or omissions alleged, or that could have been alleged, in the Stockholder Derivative Litigation, and maintain that they acted in good faith and in a manner they reasonably believed to be in the best interests of Broadwind and its stockholders. Defendants also have denied and continue to deny all allegations that the Company has suffered damage by or as a result of the matters alleged in the Stockholder Derivative Litigation. This Stipulation and all related documents are not, and shall not in any event be construed or deemed to be evidence of fault or liability or wrongdoing or damage whatsoever, or any infirmity in Defendants' defenses. Broadwind believes that the Settlement set forth in this Stipulation confers substantial benefits upon Broadwind and its stockholders and that entering into the Settlement is in the best interests of Broadwind and its stockholders.

## IV.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Plaintiffs (for themselves and derivatively on behalf of Broadwind) and Broadwind, by and through their respective counsel or attorneys of record, as follows.

### 1.   Definitions

As used in this Stipulation the following terms have the meanings specified below.  In the event of any inconsistency between any definition set forth below and any definition set forth in any document related to the Settlement set forth in this Stipulation, the definitions set forth below shall control.

1.1   "Action" means the consolidated stockholder derivative action captioned *Bonnie Mitchell, et al., v. David P. Reiland, et al.,* No. 11-cv-01059.

1.2   "Broadwind" or the "Company" means Broadwind Energy, Inc., including, but not limited to, its predecessors, successors, controlling stockholders, partners, joint venturers, subsidiaries, affiliates, divisions and assigns.

1.3   "Court" means the United States District Court for the Northern District of Illinois, Eastern Division.

1.4   "Defendants" means nominal party Broadwind, the Individual Defendants and the Tontine Defendants.

1.5   "Demand" means Plaintiffs' shareholder litigation demand dated June 28, 2012 as attached hereto as Exhibit A.

1.6   "Effective Date" means the first date by which all of the events and conditions specified in ¶6.1 of this Stipulation have been met and have occurred.

1.7   "Final" means the time when the Final Judgment and Order has not been reversed, vacated, or modified in any way and is no longer subject to appellate review, either because of

disposition on appeal and conclusion of the appellate process or because of passage, without action, of time for seeking appellate review. More specifically, it is that situation when: (1) either no appeal has been filed and the time has passed for any notice of appeal to be timely filed in the Action; or (2) an appeal has been filed and the court(s) of appeals has/have either affirmed the judgment or dismissed that appeal and the time for any reconsideration or further appellate review has passed; or (3) a higher court has granted further appellate review and that court has either affirmed the underlying judgment or affirmed the court of appeals' decision affirming the judgment or dismissing the appeal.

1.8    "Final Judgment and Order" or "Judgment" means the Final Judgment and Order of Dismissal with Prejudice substantially in the form attached hereto as Exhibit B.

1.9    "Individual Defendants" means defendants J. Cameron Drecoll, James M. Lindstrom, Charles H. Beynon, David P. Reiland, William T. Fejes, Jr., and Terence P. Fox.

1.10   "Lead Counsel" means Kessler Topaz Meltzer & Check, LLP.

1.11   "Notice" or "Notice of Proposed Settlement" means the form of notice of the Settlement to be provided by Broadwind, substantially in the form of the attached Exhibit C.

1.12   "Parties" means, collectively, each of (i) the Plaintiffs on behalf of themselves and derivatively on behalf of Broadwind; and (ii) Broadwind.

1.13   "Person" means an individual, corporation, limited liability company, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

1.14   "Plaintiffs" means Bonnie Mitchell and Michael Friedman.

1.15    "Plaintiffs' Counsel" means Kessler Topaz Meltzer & Check, LLP and The Shuman Law Firm and any other law firm that appeared for the Plaintiffs.

1.16    "Preliminary Approval Order" means the order to be rendered by the Court preliminarily approving the Settlement, substantially in the form of the attached Exhibit D.

1.17    "Related Persons" means each of a Person's spouses, heirs, executors, estates, or administrators, each of a Person's present and former attorneys, legal representatives, and assigns in connection with the Action and Demand, and all of a Person's past and present directors, officers, agents, advisors, employees, affiliates, predecessors, successors, and parents.

1.18    "Released Claims" means collectively all actions, suits, claims, demands, rights, liabilities, causes of action, and controversies of any kind, including both known claims and Unknown Claims (as defined herein), that have been or that might have been asserted by Plaintiffs, any of the Individual Defendants, any of the Tontine Defendants, Broadwind, and/or any Broadwind stockholder derivatively on behalf of Broadwind, against any Released Persons that are directly or indirectly based upon or related to (i) any of the allegations, facts, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act which were alleged in the Action and/or the Demand; and/or (ii) the settlement of the Action and Demand, including the payments provided for in this Stipulation, and the reasonable attorneys' fees, costs, and expenses incurred in defense thereof.  Released Claims do not include any claims relating to the enforcement of this Settlement.

1.19    "Released Persons" shall mean and include (i) Plaintiffs or their beneficiaries; (ii) each of the Individual Defendants or their beneficiaries; (iii) the Tontine Defendants; (iv) Broadwind; and (v) any Broadwind stockholder derivatively on behalf of Broadwind, and for all of the above listed Persons, each and all of their Related Persons.

1.20    "Securities Class Action" means *Brasher v. Broadwind Energy, Inc.*, No. 11-CV-991 (N.D. Ill.).

1.21    "Tontine Defendants" means Tontine Overseas Fund, Ltd., Tontine Capital Overseas Master Fund, L.P., Tontine 25 Overseas Master Fund, L.P., Tontine Capital Partners, L.P., and Tontine Partners, L.P., and any other related Tontine entity.

1.22    "Settlement" means the settlement documented in this Stipulation.

1.23    "Stockholder Derivative Litigation" means the Action and Demand.

1.24    "Unknown Claims" means any and all claims that were alleged or could have been alleged in the Action or Demand by Plaintiffs, Broadwind or any Broadwind stockholder derivatively on behalf of Broadwind, which any Plaintiff, Broadwind, or Broadwind stockholder derivatively on behalf of Broadwind does not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons, including claims which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to this Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Plaintiffs, Individual Defendants and Broadwind shall expressly waive, and each of Broadwind's stockholders by operation of the Judgment shall have expressly waived, the provisions, rights and benefits of California Civil Code §1542, which provides:

> *A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.*

The Parties acknowledge that they may discover facts in addition to or different from those now known or believed to be true by them, with respect to the Released Claims, as the case may be, but it is the intention of the Parties to completely, fully, finally, and forever compromise, settle, release, discharge, and extinguish any and all of the Released Claims, known or unknown, suspect or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts.

## 2.    Settlement Consideration

2.1    **Corporate Governance Reforms**.  The Company shall adopt and/or maintain the corporate governance reforms (the "Corporate Governance Reforms") detailed below within ninety (90) days of entry of the Final Judgment and Order approving the Settlement herein.  The Corporate Governance Reforms shall be maintained for a period of five (5) years, except for modifications consistent with the goals of the Settlement or required by applicable law or regulation.  Broadwind acknowledges that the adoption of the Corporate Governance Reforms confers a substantial benefit upon Broadwind and that the Stockholder Derivative Litigation was a material and substantial factor in the implementation and/or maintenance of the Corporate Governance Reforms.

### A.    Audit Committee Oversight and Responsibilities

The Company's management and Board will maintain a process to review, on at least an annual basis, the Company's accounting methods and application of "GAAP" (generally accepted accounting principles) rules and conventions and analyze, in consultation with the Company's independent outside auditor, whether changes to those policies and/or practices are appropriate.  Additionally, the Company's Chief Financial Officer will maintain the practice of, on at least a bi-annual basis, meeting with the Company's independent outside auditor for the

purpose of reviewing the Company's accounting methods and application of GAAP rules and conventions. At least the following matters will be reviewed at this meeting:

  i  Any new accounting policies, standards and/or guidance relevant to the Company (including any proposed changes to standards or guidance); and

  ii  The adequacy of the Company's internal controls over financial reporting, particularly with respect to goodwill.

The third bullet point of Section III, A. of the Charter of the Audit Committee of the Board shall be amended to state in full: "Review with management and the independent accountants any quarterly or annual report prior to its filing and any release of earnings prior to its release. If applicable, such review shall include a review of the Company's disclosures under 'Management's Discussion and Analysis of Financial Condition and Results of Operations.' Such review also shall include a review of the Company's goodwill balance and any testing thereof. If the Company has a material goodwill balance, the Committee shall receive a written report on its status."

*See* Exhibit E, Revised Audit Committee Charter.

**B.     Compensation Clawback Policy**

The Board shall adopt the following policy regarding the "clawback" of compensation to an Executive Officer (defined below):

The Compensation Committee of the Board (the "Compensation Committee") may in its discretion and to the extent legally permitted, require the return, repayment or forfeiture of any annual or long-term incentive payment or award made or granted to any current or former Executive Officer during the 12-month period following the filing with the Securities and Exchange Commission ("SEC") of Company financial statements that are later the subject of a material negative restatement (a "Restatement"), if:

        i        the payment or award was predicated upon achieving certain financial results that were subsequently the subject of the Restatement;

        ii        the Compensation Committee determines that the Executive Officer engaged in intentional misconduct that caused the need for the Restatement; and

        iii      a lower payment or award would have been made to the Executive Officer based upon the restated financial results.

In each such instance, the amount required to be returned, repaid or forfeited shall be the amount by which the Executive Officer's payment or award for the relevant period exceeded the lower payment or award that would have been made or granted based on the restated financial results.

In addition, the Compensation Committee may in its discretion and to the extent legally permitted, require the return or repayment of any profits realized by such Executive Officer on the sale of Company securities received pursuant to any such award granted during such 12-month period following the filing with the SEC of Company financial statements that are later the subject of such a Restatement, if the Compensation Committee determines that the Executive Officer engaged in intentional misconduct that caused the need for the Restatement.

For purposes of this policy, the term "Executive Officer" has the meaning set forth in Rule 3b-7 under the Securities Exchange Act of 1934, as amended.

Notwithstanding the foregoing, the Compensation Committee may amend or change the terms of this Policy on Recoupment of Incentive Compensation, including as may be required upon the issuance of implementing regulations and the adoption of listing standards in accordance with the Dodd-Frank Act.  In addition, the exercise by the Compensation Committee of any rights pursuant to this Policy shall be without prejudice to any other rights that the Company may have with respect to any Executive Officer subject to this Policy.

### C. Insider Trading Policy

The Company's current Policy Statement on Inside Information and Securities Trading shall be amended as follows:  The section entitled "Additional Discouraged and Prohibited Transactions" shall be amended to add the following separate provision: "<u>Participation in Company stock buy-back programs</u>.  During the pendency of any Company-funded open market stock buy-back program, Designated Persons (defined below) shall not sell Broadwind securities.  Also, the Company will not buy back Broadwind securities from any Company employee or Board member."  The section subtitled "Additional Requirements" under the section "Rule 10b-1 Trading Arrangements" shall be amended to add the provision that:  "The Company shall publicly announce any contract, instruction or plan adopted pursuant to Rule 10b5-1.  Such public disclosure shall state who adopted the contract, instruction or plan and its effective dates.  Such public disclosure may be included in the Company's proxy statement, press releases, on the Company's website and/or through a current or periodic report filed with the SEC."

*See* Exhibit F, Revised Policy Statement on Inside Information and Securities Trading.

### D. Whistleblower Policy

The Company shall maintain its current Whistleblower Policy, including its third-party operated Whistleblower Hotline, which provides an anonymous communication channel for employees and other individuals to report their concerns regarding, among other things, the integrity of the Company's public disclosures, internal controls, or auditing, or concerns relating to ethical business practices or personal conduct, integrity, and professionalism.  The Audit Committee of the Board shall continue to receive quarterly reports of complaints, concerns, or allegations made to the Whistleblower Hotline.

The Company's Whistleblower Policy and Whistleblower Hotline number shall be distributed to all Company employees and shall be published on the Company's internal website.

### E. In-House Counsel

The Company's in-house counsel shall participate in training regarding relevant SEC disclosure requirements, internal corporate controls, Sarbanes-Oxley compliance and Dodd-Frank compliance provided by a state bar accredited organization on at least an annual basis.

### F. Director Education

The Board shall revise its "Principles of Corporate Governance" as follows:

Section I.F. shall be amended to add that: "Each director is required to attend a director education program at least once every five years during such director's tenure on the Board."

*See* Exhibit G, Revised Principles of Corporate Governance.

The Parties agree that the first such director education program will occur within two years of the finalization of the Settlement.

### G. Conflict Transactions

The Board shall revise its "Principles of Corporate Governance" as follows:

Section I.V.E. shall be amended to add that: "Notwithstanding the foregoing, any proposed transaction between the Company and any officer or director (other than matters related to employment and compensation) shall be submitted to the Audit Committee in advance for review and consideration at a meeting of the Audit Committee, which will be documented in dated meeting minutes."

*See* Exhibit G, Revised Principles of Corporate Governance.

### H. Majority Voting

The Company shall amend its By-Laws to provide for the following:

<u>Election of Directors</u>. Directors shall be elected by the vote of the majority of the votes cast (meaning the number of shares voted "for" a nominee must exceed the number of shares voted "against" such nominee) with "abstentions" and "broker non-votes" not counted as a vote

-14-

cast either "for" or "against" that nominee's election at any meeting for the election of directors at which a quorum is present; provided, however, that in a Contested Election of Directors (as defined below) at such a meeting, directors shall be elected by a plurality of the votes cast on the election of directors (instead of by votes cast "for" or "against" a nominee).  The term "Contested Election of Directors" shall mean an annual or special meeting of the stockholders of the Corporation with respect to which (i) the secretary of the Corporation (the "Secretary") receives a notice that a stockholder has nominated or intends to nominate a person for election to the Board in compliance with the requirements for stockholder nominees for director set forth in Section 1.14 of these Bylaws and (ii) such nomination has not been withdrawn by such stockholder on or prior to the tenth (10th) day before the Corporation first mails its notice of meeting for such meeting to the stockholders. Stockholders shall be entitled to cast votes "against" nominees for director unless plurality voting applies in the election of directors.  If, with respect to an election of directors not constituting a Contested Election of Directors and for which a quorum is present, any incumbent director does not receive a majority of the votes cast, such director shall promptly tender his or her resignation from the Board following certification of the stockholder vote.  Such resignation will be effective only upon the acceptance thereof by the Board.  Such director shall continue in office until such resignation is accepted or, if not accepted, such director's successor shall have been elected and qualified.  The Governance/Nominating Committee shall promptly consider the tendered resignation, and a range of possible responses based on the circumstances, if known, that led to the election results, and make a recommendation to the Board on whether to accept or reject the resignation or whether any other action should be taken with respect thereto.  The Board will act on any such recommendation by the Governance/Nominating Committee within ninety (90) days following

certification of the stockholder vote and will promptly publicly disclose its decision and the rationale behind it in a filing with the Securities and Exchange Commission. Any director who tenders a resignation pursuant to this provision shall not participate in the Governance/Nominating Committee or Board recommendation or deliberations regarding whether to accept the resignation offer or take other action. If directors who have tendered resignations constitute a majority of the directors then in office, then, with respect to each tendered resignation, all directors, other than the director who tendered the particular resignation under consideration, may participate in the deliberations and action regarding whether to accept or reject the tendered resignation or to take other action with respect thereto.

2.2 **Benefits Relating to Tontine Defendants.** In connection with a resolution of the Stockholder Derivative Litigation, the Tontine Defendants agreed to surrender certain rights pursuant to various Securities Purchase Agreements, including the right to designate any member(s) of the Board, the right to observe meetings of the Board, and the right to participate in any future issuances of stock by the Company.

2.3 **Other Financial Benefits.** Broadwind agreed not to indemnify the Tontine Defendants at the full amount of their fees or costs associated with the defense of the Securities Class Action or with respect to any derivative claims based upon the wrongdoing alleged in the Stockholder Derivative Litigation. As a result of the foregoing and as a result of the Stockholder Derivative Litigation, the Tontine Defendants agreed to accept a reduced rate of payment. Furthermore, as a result of the Stockholder Derivative Litigation, the Company did not make any financial contribution to the settlement of the Securities Class Action.

### 3. Procedure for Implementing the Settlement

3.1 After execution of this Stipulation, the Parties shall file a joint motion to reopen the action pursuant to Federal Rule of Civil Procedure 60(b)(6) and for an entry of an order

substantially in the form of Exhibit D hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation, and approval for the dissemination of the Notice to Broadwind stockholders in the form attached as Exhibit C hereto.  Not later than ten (10) business days following the entry of the Preliminary Approval Order, Broadwind shall cause this Stipulation and the Notice to be filed with the SEC on Form 8-K, publish the Notice one time in *Investor's Business Daily*, and shall post the Notice and this Stipulation on the "Investors" section of Broadwind's website under "SEC Filings".  Broadwind and/or its insurers shall be solely responsible for the costs of the Notice set forth herein and/or any other notice as may be required by the Court.

3.2     Plaintiffs will request that after the Notice is given, the Court hold a hearing (the "Settlement Hearing") to consider and determine whether to approve the terms of the Settlement as fair, reasonable and adequate, including the payment of attorneys' fees and expenses in the amount separately negotiated by the Plaintiffs and Broadwind with the assistance and oversight of the Mediator.

**4.     Releases**

4.1     Upon the Effective Date, Broadwind, Plaintiffs (acting on their own behalf and derivatively on behalf of Broadwind), and each of Broadwind's stockholders (solely in their capacity as Broadwind stockholders) shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged the Released Claims against the Released Persons and any and all claims arising out of, relating to, or in connection with, the defense, settlement or resolution of the Stockholder Derivative Litigation against the Released Persons.  Broadwind, Plaintiffs (acting on their own behalf and derivatively on behalf of Broadwind) and each of Broadwind's stockholders (solely in their capacity as Broadwind stockholders) shall be deemed to have, and by operation of the Judgment shall have, covenanted

not to sue any Released Person with respect to such Released Claims, and shall be permanently barred and enjoined from instituting, commencing or prosecuting the Released Claims against any and all of the Released Persons except to enforce the releases and other terms and conditions contained in this Stipulation and/or the Judgment entered pursuant thereto. Nothing herein shall in any way impair or restrict the rights of any Party to enforce the terms of this Stipulation.

4.2     Upon the Effective Date, as defined in ¶1.6 hereof, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged each and all of Broadwind, Plaintiffs and Plaintiffs' Counsel from all claims (including Unknown Claims) arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement or resolution of the Stockholder Derivative Litigation or the Released Claims. Nothing herein shall in any way impair or restrict the rights of any Party to enforce the terms of this Stipulation.

**5.     Plaintiffs' Counsel's Attorneys' Fees and Expenses**

5.1     After negotiation of the principal terms of the Settlement, counsel for Plaintiffs and Broadwind separately negotiated at arm's-length the amount of attorneys' fees and expenses to be paid to Plaintiffs' Counsel. After a full-day mediation with the Mediator and after several months of arm's-length negotiations with the assistance and oversight of the Mediator, the Company and/or its insurers agreed to pay an award of attorneys' fees and expenses to Plaintiffs' Counsel in the total amount of $600,000 (the "Fee and Expense Award"), subject to approval of the Court. The Parties mutually agree that the Fee and Expense Award is fair and reasonable in light of the substantial benefits conferred upon Broadwind and its stockholders by this Stipulation. The Fee and Expense Award shall be paid to Kessler Topaz Meltzer & Check, LLP within ten (10) business days after the later of the entry of the Final Judgment and Order or the

Court's execution of an order approving the Fee and Expense Award, notwithstanding the existence of any timely filed objections to the Settlement, or potential appeal.

5.2 Except as expressly provided herein, Plaintiffs and Plaintiffs' Counsel shall bear their own fees, costs and expenses, and no Released Person shall assert any claim for expenses, costs or fees against any Plaintiff or Plaintiffs' Counsel.

5.3 In the event that the Fee and Expense Award is reduced, reversed, modified or not approved in the full amount requested, if the Settlement is terminated or is not approved by the Court, or if there is an appeal and any order approving the Settlement does not become Final, Plaintiffs' Counsel shall refund the advanced amount consistent with such reversal or modification within ten (10) business days after entry of such order. Plaintiffs' Counsel agree that they remain subject to the continuing jurisdiction of the Court for the purpose of enforcing their obligation to repay attorneys' fees and expenses as provided in this paragraph.

5.4 Notwithstanding the foregoing, any reduction, reversal, modification or non-approval of the Fee and Expense Award shall not in any way delay or preclude the Final Judgment and Order from becoming Final. Neither Plaintiffs nor Plaintiffs' Counsel may cancel or terminate the Stipulation or the Settlement based on any court's ruling with respect to any Fee and Expense Award.

## 6. Conditions of Settlement, Effect of Disapproval, Cancellation or Termination

6.1 The Effective Date of the Settlement shall be conditioned on the occurrence of all of the following events:

A. entry of the Preliminary Approval Order, which shall be in all material respects substantially in the form set forth in Exhibit D hereto;

B. the entry by the Court of the Final Judgment and Order, which shall be in all material respects substantially in the form of Exhibit B hereto; and

C. the Final Judgment and Order have both become Final.

6.2     If any of the conditions specified in ¶6.1 above are not met, then this Stipulation shall be canceled and terminated unless the Parties mutually agree in writing, by and through their respective counsel, to proceed with this Stipulation.

6.3     In the event that this Stipulation or the Settlement is not approved by the Court, or the Settlement is terminated for any reason, the Parties shall be restored to their respective positions in the Stockholder Derivative Litigation as of the last date before this Stipulation, and all negotiations, proceedings, documents prepared and statements made in connection herewith shall be without prejudice to the Parties, shall not be deemed or construed to be an admission by any Party of any act, matter, or proposition and shall not be used in any manner for any purpose in any subsequent proceeding in the Stockholder Derivative Litigation or in any other action or proceeding.  In such event, the terms and provisions of this Stipulation, with the exception of ¶¶1.1-1.24, 6.2, 6.3, 7.6, 7.8, 7.9, 7.10, 7.11, 7.13, 7.15 and 7.16 herein, shall have no further force and effect with respect to the Parties and shall not be used in the Stockholder Derivative Litigation or in any other proceeding for any purpose, and any judgment or orders entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

## 7.     Miscellaneous Provisions

7.1     The Parties (a) acknowledge that it is their intent to consummate this Stipulation; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation.

7.2     The Parties intend the Settlement to be a final and complete resolution of all disputes between Plaintiffs, Broadwind, the Individual Defendants and the Tontine Defendants with respect to the Stockholder Derivative Litigation.  The Settlement comprises claims which are contested and shall not be deemed an admission by any Party as to the merits of any claim,

allegation or defense. The Parties further agree that the claims are being settled voluntarily after consultation with competent legal counsel. The Final Judgment and Order shall contain a finding that during the course of the litigation, the Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11 and all other similar laws.

7.3    Pending final determination of whether the Settlement should be approved, all proceedings in the Action and all further activity between the Parties regarding or directed toward the Stockholder Derivative Litigation, save for those activities and proceedings relating to this Stipulation and the Settlement, shall be stayed.

7.4    Pending the Effective Date of this Stipulation or the termination of this Stipulation according to its terms, Plaintiffs and their Related Persons are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement or prosecution of any action asserting any Released Claims against any Released Person.

7.5    The provisions contained in this Stipulation (including any exhibits attached hereto) shall not be deemed a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing, or lack of merit as to any facts or claims alleged or asserted in the Stockholder Derivative Litigation or in any other action or proceeding, and shall not be interpreted, construed, deemed, invoked, offered, or received into evidence or otherwise used by any person in the Stockholder Derivative Litigation or in any other action or proceeding, whether civil, criminal, or administrative, except in connection with any proceeding to enforce the terms of the Settlement. The Released Persons may file this Stipulation and/or the Final Judgment and Order in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release,

good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

7.6     The exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

7.7     This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

7.8     This Stipulation and the exhibits attached hereto constitute the entire agreement among the Parties and no representations, warranties or inducements have been made to any Party concerning this Stipulation or any of its exhibits other than the representations, warranties and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each Party shall bear its own costs.

7.9     Each counsel or other Person executing this Stipulation or its exhibits on behalf of any Party hereby warrants that such Person has the full authority to do so.

7.10    This Stipulation may be executed in one or more counterparts.  A faxed or pdf signature shall be deemed an original signature for the purposes of this Stipulation.  All executed counterparts, and each of them, shall be deemed to be one and the same instrument.  A complete set of counterparts, either originally executed or copies thereof, shall be filed with the Court.

7.11    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties and the Released Persons.

7.12    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and the Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

7.13    This Stipulation and the exhibits attached hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Illinois, and the rights and obligations of the parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Illinois without giving effect to that State's choice-of-law principles.

7.14    Plaintiffs have not assigned, encumbered, or in any manner transferred in whole or in part any of the Released Claims.

7.15    All agreements made and orders entered during the course of the Stockholder Derivative Litigation relating to the confidentiality of information shall survive this Stipulation.

7.16    Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation. If any of the conditions specified in ¶6.1 hereof are not met, then this Stipulation shall be canceled and terminated unless Lead Counsel and counsel for the other Parties mutually agree in writing to proceed with this Stipulation.

IN WITNESS WHEREOF, the Parties have caused this Stipulation to be executed by their duly authorized attorneys and dated January 10, 2014.

Date: January 10, 2014

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**

Eric L. Zagar
Robin Winchester
280 King Of Prussia Road
Radnor, Pennsylvania 19087
Tel: (610) 667-7706

*Lead Counsel for Plaintiffs*

Kip B. Shuman
Rusty E. Glenn

-23-

885 Arapahoe Avenue
Boulder, Colorado 80302
Tel: (303) 861-3003

*Additional Counsel for Plaintiffs*

Date: January 10, 2014

**SIDLEY AUSTIN LLP**

*Kristen Seeger*

James W. Ducayet
Kristen R. Seeger
Meredith Jenkins Laval
One South Dearborn Street
Chicago, Illinois 60603
Tel: (312) 853-7000
*Counsel for Broadwind Energy, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| BONNIE MITCHELL and MICHAEL FRIEDMAN, Derivatively on Behalf of Nominal Defendant BROADWIND ENERGY, INC., | |
| Plaintiffs, | **Case No. 11-CV-01059** |
| v. | |
| DAVID P. REILAND, *et al.*, | **FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE** |
| Defendants, | |
| and | |
| BROADWIND ENERGY, INC., | |
| Nominal Defendant. | |

This Court having considered the Stipulation and Agreement of Settlement dated as of January 10, 2014, including all exhibits thereto (the "Stipulation"), between (i) plaintiffs Bonnie Mitchell and Michael Friedman ("Plaintiffs"), on behalf of themselves and derivatively on behalf of Broadwind Energy, Inc. ("Broadwind" or the "Company"), and (ii) nominal defendant Broadwind; and having held a hearing on April 3, 2014; and having considered all of the submissions and arguments with respect thereto, and otherwise being fully informed, and good cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.    This Final Judgment and Order of Dismissal with Prejudice ("Judgment") incorporates herein and makes a part hereof the Stipulation, including the exhibits thereto. Unless otherwise defined herein, all capitalized terms used herein shall have the same meanings as set forth in the Stipulation.

2.    The Court has jurisdiction over the subject matter of the Stockholder Derivative Litigation, including all matters necessary to effectuate the Settlement, and over all Parties.

3.    The record shows that Notice has been given to Broadwind's stockholders in the manner approved by the Court in its Preliminary Approval Order (Docket No. 127).  The Court finds that such Notice (i) constitutes reasonable and the best notice practicable under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise all Broadwind stockholders who could reasonably be identified of the pendency of the Stockholder Derivative Litigation, the terms of the Settlement, and Current Broadwind Stockholders' right to object to and to appear at the settlement fairness hearing held on April 3, 2014 (the "Settlement Hearing"); (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice in accordance with Federal Rule of Civil Procedure 23.1(c); and (iv) meets the requirements of due process.

4.    In light of the benefits to the Company, the complexity, expense and possible duration of further litigation against the Defendants, the risks of establishing liability and damages, and the costs of continued litigation, the Court hereby fully and finally approves the

Settlement, pursuant to Federal Rule of Civil Procedure 23.1(c), as set forth in the Stipulation in all respects, and finds that the Settlement is, in all respects, fair, reasonable, and adequate, and in the best interests of Plaintiffs, Broadwind, and Broadwind's stockholders. The Court further finds the Settlement set forth in the Stipulation is the result of arm's-length negotiations between experienced counsel representing the interests of Broadwind, Broadwind's stockholders, and Defendants. The Court has considered any submitted objections to the Settlement and hereby overrules them.

5. The Parties are hereby directed to implement and consummate the Settlement according to the terms and provisions of the Stipulation. In addition, the Parties are authorized to agree to and adopt such amendments and modifications to the Stipulation, or any exhibits attached thereto, to effectuate the Settlement if they (i) are consistent in all material respects with this Judgment, and (ii) do not limit the rights of Broadwind's stockholders in connection with the Settlement. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

6. The Action is hereby dismissed in its entirety as to the Defendants, with prejudice, and without costs to any party to the Action except as otherwise provided in the Stipulation. The parties to the Action are to bear their own costs, except as otherwise provided in the Stipulation.

7. The Court finds that during the course of the litigation the Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure, and particularly with Rule 11(b) of the Federal Rules of Civil Procedure.

8. Upon the Effective Date of the Settlement (as defined in Paragraph 1.6 of the Stipulation), Broadwind, Plaintiffs (acting on their own behalf and derivatively on behalf of Broadwind), and each of Broadwind's stockholders (solely in their capacity as Broadwind stockholders) shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished and discharged the Released Claims against the Released Persons and any and all claims arising out of, relating to, or in connection with, the

defense, settlement or resolution of the Stockholder Derivative Litigation against the Released Persons.

9. Upon the Effective Date of the Settlement (as defined in Paragraph 1.6 of the Stipulation), each of the Released Persons shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished and discharged each and all of Broadwind, Plaintiffs and Plaintiffs' Counsel from all claims (including Unknown Claims) arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement or resolution of the Stockholder Derivative Litigation or the Released Claims.

10. The provisions contained in the Stipulation (including any exhibits attached thereto) shall not be deemed a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing, or lack of merit as to any facts or claims alleged or asserted in the Stockholder Derivative Litigation or in any other action or proceeding, and shall not be interpreted, construed, deemed, invoked, offered, or received into evidence or otherwise used by any person in the Stockholder Derivative Litigation or in any other action or proceeding, whether civil, criminal, or administrative, except in connection with any proceeding to enforce the terms of the Settlement. The Released Persons may file the Stipulation and/or this Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

11. The Court hereby approves the Fee and Expense Award in accordance with the Stipulation.

12. Without affecting the finality of this Judgment, the Court retains continuing and exclusive jurisdiction over all matters relating to administration, consummation, enforcement and interpretation of the Stipulation, the Settlement, and of this Judgment, to protect and effectuate this Judgment, and for any other necessary purpose. Plaintiffs, Defendants and each Broadwind stockholder are hereby deemed to have irrevocably submitted to the exclusive jurisdiction of the

Court for the purpose of any suit, action, proceeding or dispute arising out of or relating to the Settlement or the Stipulation, including the exhibits thereto, and only for such purposes. Without limiting the generality of the foregoing, and without affecting the finality of this Judgment, the Court retains exclusive jurisdiction over any such suit, action or proceeding. Solely for purposes of any such suit, action or proceeding, to the fullest extent they may effectively do so under applicable law, Plaintiffs, Defendants and each Broadwind stockholder are hereby deemed to have irrevocably waived and agreed not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of the Court, or that the Court is, in any way, an improper venue or an inconvenient forum.

13.     In the event that the Settlement does not become effective in accordance with the terms of the Stipulation, this Judgment shall be vacated, and all Orders entered and releases delivered in connection with the Stipulation and this Judgment shall be null and void, except as otherwise provided for in the Stipulation.

14.     This Judgment is a final, appealable judgment and should be entered forthwith by the Clerk in accordance with Rule 58, Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

DATED: April 3, 2014

THE HONORABLE ROBERT W. GETTLEMAN

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE REVOLUTION LIGHTING TECHNOLOGIES, INC. DERIVATIVE ACTION, | Lead Case No. 1:19-cv-03913 |
| This Document Relates To:<br><br>ALL ACTIONS | |

## <u>ORDER AND FINAL JUDGMENT</u>

This matter came before the Court for hearing on August 11, 2020, to consider approval of the proposed settlement ("Settlement") set forth in the Stipulation and Agreement of Settlement dated January 30, 2020, and the exhibits thereto (the "Stipulation"). The Court has reviewed and considered all documents, evidence, objections (if any), and arguments presented in support of or against the Settlement. Good cause appearing therefore, the Court enters this Order and Final Judgment ("Judgment").

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

Unless otherwise stated herein, all capitalized terms contained in this Judgment shall have the same meaning and effect as stated in the Stipulation (which is deemed attached hereto).

This Court has jurisdiction over the subject matter of the New York Action and over the Settling Parties to the New York Action.

This Court hereby approves the Settlement set forth in the Stipulation and finds that the Settlement is, in all respects, fair, reasonable, and adequate to each of the Settling Parties, Revolution Lighting Technologies, Inc. ("Revolution"), and Current Revolution Stockholders, and hereby finally approves the Settlement in all respects and directs the Settling Parties to perform the

- 1 -

terms of the Settlement as set forth in the Stipulation.

This Court hereby dismisses the New York Action with prejudice and without costs to the Settling Parties, except as otherwise provided below.

Upon the Effective Date, Plaintiffs (individually and derivatively on behalf of Revolution), Revolution, any other Current Revolution Stockholders on behalf of Revolution, and Plaintiffs' Counsel shall be deemed to have fully, finally, and forever released, relinquished, and discharged all Released Claims (including Unknown Claims) against the Released Parties.

Upon the Effective Date hereof, the Settling Parties are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement or prosecution of any action asserting any Released Claims against any of the Released Parties as set forth in and in accordance with the terms of the Stipulation. Nothing herein shall in any way impair or restrict the rights of any Settling Party to enforce the terms of the Stipulation.

Upon the Effective Date, each of the Released Parties shall be deemed to have fully, finally, and forever released, relinquished, and discharged Plaintiffs and Plaintiffs' Counsel from any and all Defendants' Released Claims. Nothing herein shall in any way impair or restrict the rights of any Settling Party to enforce the terms of the Stipulation.

The Court finds that the Notice of Pendency and Proposed Settlement of Shareholder Derivative Action ("Notice") was given in accordance with the Preliminary Approval and Scheduling Order entered on April 10, 2020, and that such Notice was reasonable, constituted the most practicable notice under the circumstances to Current Revolution Stockholders, and complied with the requirements of federal law and due process.

The Court hereby approves the Fee and Expense Award and directs payment of the Fee and Expense Award of $583,333.33 in accordance with the terms of the Stipulation.

The Court hereby approves the Service Awards of $2000 for each Plaintiff to be paid from Plaintiffs' Counsel's Fee and Expense Award in recognition of Plaintiffs' participation and efforts in the prosecution of the Actions.

During the course of the litigation of the Actions, all Settling Parties and their counsel acted in good faith and complied with Fed. R. Civ. P. 11 and any similar rule or statue.

Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement, is or may be deemed to be or may be used as: (a) an admission of, or evidence of, the validity of any Released Claim or any wrongdoing or liability of the Defendants, or the Court's jurisdiction over the Released Parties for purpose of the Released Claims or for any other purpose; (b) an admission or concession by Plaintiffs or any Revolution stockholder of any infirmity in the claims asserted in the Complaints; or (c) an admission of, or evidence of, any fault or omission of any of the Released Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. The Released Parties may file the Stipulation and/or this Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, equitable estoppel, judicial estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this Settlement; and (b) all Settling Parties and the Settling Parties' counsel hereto for the sole purpose of construing, enforcing, and administering the Stipulation and this Order and Final Judgment, including, if necessary, setting aside and vacating this Judgment, on motion of a Settling Party, to the extent consistent and in accordance

- 3 -

with the Stipulation if the Effective Date fails to occur in accordance with the Stipulation.

There is no reason for delay in the entry of this Judgment and immediate entry by the Clerk of the Court is expressly directed by the Court.

**The Clerk is directed to close the motions at Dkt. Nos. 24 and 28.**

**The Clerk is directed to close this case (19-cv-3913) as well as 19-cv-4124.**

_____     _____

SO ORDERED.

Dated:  August 11, 2020                  _____
                                                                      J. PAUL OETKEN
                                                              United States District Judge

ActiveUS 178536940

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on January 10, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

<u>*/s James W. Ducayet*</u>
James W. Ducayet
